STATE EX REL. MARK D. EAGLETON, THOMAS H. COBBS, BEN L. LIBER-MAN and FRANCIS L. GEORGE, Constituting the BOARD OF POLICE COMMISSIONERS of the CITY OF ST. LOUIS, MISSOURI, Relators, v. THE HONORABLE WILLIAM C. HUGHES, THE HONORABLE EDWARD J. McCULLEN, and THE HONORABLE LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 39665.—194 S. W. (2d) 307.

Court en Banc, May 8, 1946.

*George L. Stemmler, City Counselor,* and *Charles J. Dolan,* Associate City Counselor, for relators.

*Joseph M. Walsh* for respondent.

LEEDY, J.—Certiorari to the Judges of the St. Louis Court of Appeals to review their opinion in State ex rel. Kilker v. Huffman, and others, constituting the Board of Police Commissioners of the City of St. Louis, reported in 187 S. W. (2d) 850. Said action originated in the circuit court of said city, and was for mandamus to compel the respondents therein, the Board of Police Commissioners, to make or cause to be made an application to the Board of Trustees of the Police Retirement System of said city on behalf of Kilker for accidental disability benefits. A peremptory writ was awarded, and the police commissioners appealed to the St. Louis Court of Appeals, which affirmed the judgment. On the application of the police commissioners, certiorari was granted, and pending the submission here the present relators, who are the successors in office to the respondents in the action below, were, on motion, substituted as relators.

The Court of Appeals, construing certain sections of the police retirement pension act [Chap. 54, Art. 2, R. S. '39, secs. 9464-76, and corresponding sections of Mo. R. S. A.], held that the duty of members of the Board of Police Commissioners to make application to the Board of Trustees of the Retirement System on behalf of a member of said system who applies for accidental disability benefits is a ministerial duty which is enforcible by mandamus. The opinion was challenged as being in conflict with the allegedly controlling decision

of this court in State ex rel. Lambert v. Flynn, 348 Mo. 525, l. c. 528, 154 S. W. 2d 52, l. c. 54.

Preliminary to a discussion of the questions presented, we take occasion to dispose of a matter which has arisen since the submission. At the time of oral argument the question was raised by some of the members of this court as to whether the true legislative intent was not even broader than the construction given the statute in the challenged opinion; that is, that the word "of" occurring after the word "member" in line one. of subsection (5) of sec. 9469 is a misprint for the word "or." If so, then applications for accidental disability benefits and those for ordinary disability retirement benefits would be governed by precisely the same procedure; that is, both types might be made either directly by a member of the system, or by the board of police commissioners in his behalf. The parties are. now in agreement with the court's suggestion, but it is based on facts extraneous to the record certified here, and extraneous, also, to the journals or other official legislative record of the proceedings had in connection with the course of its passage at the 1929 session of the legislature. But we do not need to go to the length of actually so holding, and thus go contrary to our previous decision in the Flynn case. We venture to express the opinion that if the matter were presented to the legislature (which is now in session) in the same manner as it has been presented to us, that body might, and, in all likelihood, would adopt the same view, and, by regular and appropriate legislative action, remedy the defect.

Under subsection (5) sec. 9469, as construed in the Flynn case, a proceeding before the trustees of the retirement system "cannot be instituted by the claimant himself, but must be initiated by a member of the separate board of police commissioners." The opinion in the Flynn case, after stating that there is "good reason" for this requirement of the statute with reference to claims for accidental disability benefits, proceeds thus: "The board of police commissioners are in direct charge of the police and in a better position to know or find out the facts with respect to the accident and the character of the claimant. The circumstance that the president of the board of police commissioners is a member ex officio of the board of trustees does not dispense with the requirement that a member of the former board *initiate* the proceeding, though, of course, we do not mean to say they *determine* it.

"The subsection further exacts a proper showing that the claimant has become 'totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part.' Also the Medical Board must certify 'that such member is mentally or physically incapacitated for further

performance of duty, that such incapacity is likely to be permanent, and that such member should be retired.' The reason for this requirement is doubtless akin to that stated in the last paragraph.'' [l. c. 528, 54.]

It is upon the foregoing language that the relators base their contention that the Flynn case excludes mandamus as a remedy to compel the police board to initiate such a proceeding. We have considered the opinion of the respondent judges in the light of this attack, and have reached the conclusion that there is no conflict. The Flynn case did not directly involve the question of whether the police board's duty with reference to making applications to the board of trustees was or was not ministerial in nature. The reason ascribed by that opinion to the requirement of the statute, supra, cannot be regarded as overriding the doctrine declared in the same paragraph that while only the police board may initiate the proceeding, they may not determine it. Moreover, the opinion was careful to point out that if the members of either the board of trustees, police commissioners or the medical board ''had wrongfully refused to perform a statutory duty, the claimant would have a remedy.'' Such remedy, where, as here, the police board refuses to make application to the board of trustees on behalf of the claimant because it believes there is no merit in the claim, undoubtedly would be mandamus. To hold otherwise would be to say, in effect, that the police board has power to determine the claim, the very thing the statute and the Flynn case say it cannot do. That function is, under the statute, and as held by the respondent judges, committed to the board of trustees.

██ Not only do we fail to find conflict, but we think that, on the merits, the decision of the respondent judges was proper and should stand. Accordingly we adopt their opinion as our own, as follows (quotation marks omitted):

In his petition for the writ Kilker alleged that, through no negligence on his part, he became totally incapacitated for duty as the natural and proximate result of an accident occurring while he was in the actual performance of duty when a police department car in which he was riding was struck by a street car at Taylor Avenue and Page Boulevard in the City of St. Louis, Missouri. An alternative writ of mandamus, embodying relator's petition, was issued by the Circuit Court and in due time the police commissioners filed their return in which they denied that Kilker had become totally incapacitated for duty, and denied that there was any duty imposed upon them by statute to make an application to said Board of Trustees on behalf of Kilker. Relator (Kilker) filed an answer to the return of the police commissioners and the cause was duly heard by and submitted to the court, after which a peremptory writ of mandamus was ordered issued against the police commissioners, as prayed for by

42

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

relator. From said action of the court the police commissioners duly appealed.

The record shows that Kilker was a member of the Police Department of the City of St. Louis and at the time of the hearing of this cause in the Circuit Court he was making, and prior thereto had been making, regular contributions to the Police Retirement System of the City of St. Louis, as required by law.

It appears without dispute that on July 12, 1942, while Kilker was riding in a police department automobile, on duty, said automobile was struck by the front end of a street car at Taylor Avenue and Page Boulevard in the City of St. Louis. As a result of the accident Kilker suffered injuries to his right leg and side and was taken home in a police department automobile. On July 20, 1943, Kilker made application for accidental disability retirement from the police department, alleging in his application that his disability was due to injuries sustained by him in the above-mentioned accident.

On July 24, 1943, Kilker was examined by Dr. Charles F. Sherwin, medical director of the police department, whose report was introduced in evidence. Dr. Sherwin stated therein that he had treated Kilker in August, September and October, 1943, at which time Kilker complained of soreness in the muscles of his neck and back, and that he usually came into the doctor's office with somewhat of a limp, as though he had some pain; that ▮▮▮▮ on one occasion Dr. Sherwin happened to observe Kilker on the outside and noticed that he walked perfectly correctly without any limp or stooping; that at that time Dr. Sherwin certified Kilker as fit for light duty in the police department. Said report of Dr. Sherwin further stated that Kilker's private physician and another physician told Dr. Sherwin that they could find no reason why Kilker was not able to do police duty; that prior to the filing of his application for accidental disability retirement Kilker was examined by Dr. J. F. Murphy, an orthopedic specialist, who told Dr. Sherwin, according to said report of Dr. Sherwin, that he could find no reason for Kilker's being off duty. Dr. Sherwin's report further stated that he had never been able to find any evidence of a fracture, dislocation, or any other bone injury, and that in his opinion all of Kilker's symptoms were subjective. The report of Dr. Sherwin concluded with the statement:

"This man's complaints are wholly symptomatic, that is of his own impression and cannot be substantiated by careful physical examination or X-rays.

"It is therefore my opinion that he is not wholly disabled for police duty as he alleges, but is now and has been for the past several months able to do regular police work."

The above-mentioned report of Dr. Sherwin was dated July 24, 1943.

The record further shows that on January 18, 1944, Kilker again applied to the police department for accidental disability retirement from said department, and on March 17, 1944, his attorney sent a letter to the President of the Board of Police Commissioners requesting and urging that Kilker be examined by the Medical Board of the Board of Trustees, and also requesting that the President of the Board of Police Commissioners, or some other member thereof, make the necessary application therefor, as provided for in the "Retirement Act." In reply to said letter the President of the Board of Police Commissioners stated that each member of said Board had considered and reconsidered Kilker's application with the result that none of them felt justified in presenting it to the Pension Board.

At the hearing of the cause in the Circuit Court Kilker testified that he sustained a severe injury to his back on July 12, 1942, at a time when he was in the actual performance of his duty and through no fault on his part; that at that time he was riding as a passanger in the police department automobile No. 190 when the automobile was struck by a northbound Taylor Avenue street car at the intersection of Taylor Avenue and Page Boulevard in the City of St. Louis; that since the accident he was unable to report for work some 490 days, and on the 173 days that he did report for work he was constantly suffering from severe pain in the region of his lower back; that there has never been a time since the accident that he has not been under the care of one or more doctors; that in late September and early October, 1942, he was a patient in Mayo Brothers Clinic in Rochester, Minnesota, where he went on his own expense for examination and treatment; that he had been wearing, and at the time of the hearing was still wearing, a sacroiliac brace; that he sleeps on a hard surface and applies heat and massage to his lower back twice a day; that upon awakening in the morning his back is stiff and painful for about two hours; that he cannot be on his feet or remain in a sitting position, especially while riding in an automobile for any appreciable length of time, without suffering pain and discomfort in his back; that before the accident he had enjoyed good health.

Special Officer Thomas O'Connor of the police department gave testimony which corroborated the testimony of Kilker with respect to the state of Kilker's health before and after the accident.

Appellant Edwin E. Huffman, President of the Board of Police Commissioners, testified at length concerning the manner in which Kilker's application for accidental disability benefits was considered by himself and the members of said Board. He stated that the application when received by him was accompanied by a report of the medical director of the police department, Dr. Sherwin; that the Board members did not make any special request for Dr. Sherwin to examine Kilker, but that such examination was the regular procedure, and that

the report of Dr. Sherwin contained the doctor's findings as to the physical condition of the applicant. Mr. Huffman testified that the refusal of the members of the Board of Police Commissioners to make application on behalf of Kilker to the Board of Trustees was based solely on Dr. Sherwin's report. A statement of the pertinent parts of Dr. Sherwin's report has been heretofore set forth herein. It was introduced in evidence subject to Kilker's objection that it was incompetent for the reason that Dr. Sherwin, under the Police Retirement Act, has no authority to determine a member's eligibility or non-eligibility for accidental disability benefits.

It is unnecessary to set forth at length the testimony of Mr. Huffman for the reason that the only point to be determined in this case is whether or not the duty of the members of the Board of Police Commissioners, as provided in the statute, subsection (5) of Section 9469, infra, with respect to their making application to the Board of Trustees of the Police Retirement System on behalf of a member of the police department for accidental disability benefits under the law, is a ministerial duty, failure or refusal to perform which is subject to mandamus.

Article 2 of Chapter 54 of the Revised Statutes of Missouri, 1939, is entitled: "Police Retirement Pension System in Cities of Five Hundred Thousand." It is made up of sections 9464 to and including section 9476 of the statutes. Subsection (1) of section 9468, R. S. Mo. 1939, Mo. R. S. A. sec. 9468, provides that the general administration and responsibility for the proper operation of the Police Retirement Pension System in cities of five hundred thousand inhabitants or more, and for making effective the provisions of Article 2 of Chapter 54, supra, creating such Police Retirement Pension System "are hereby vested in a board of trustees of seven persons."

Subsection (6) of section 9468, supra, provides: "The board of trustees shall have exclusive original jurisdiction in all matters relating to or affecting the funds herein provided for, including, in addition to all other matters, all claims for annuities, benefits, refunds or pensions under this law, and its action, decision or determination in any matter shall be reviewable by the common law writ of certiorari, only, and any party to such certiorari proceedings shall have a right of appeal from the decision of the reviewing court."

Subsection (11) of section 9468, supra, provides: "The board of trustees shall designate a medical board to be composed of three physicians who shall arrange for and pass upon all medical examinations required under the provisions of this article, shall investigate all essential statements and certificates made by or on behalf of a member in connection with an application for disability retirement and shall report in writing to the board of trustees its conclusions and recommendations upon all the matters referred to it."

Subsection (1) of section 9469, R. S. Mo. 1939, Mo. R. S. A. section 9469, provides: "Service retirement benefit: Retirement of a member on a service retirement allowance shall be made by the board of trustees as follows."

Then follow a number of subsections of said section 9469, including subsection (5) thereof, which is as follows: "Upon application of a member of the board of police commissioners any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part, shall be retired by the board of trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired."

The appellant police commissioners contend that subsection (5) of section 9469, supra, which provides for the allowance ▮▮▮ of accidental disability benefits to a member of the police department upon application of a member of the Board of Police Commissioners, contemplates that the member of the Board of Police Commissioners making such application shall be satisfied that the person on whose behalf he makes it is entitled thereto. In support of this contention appellants cite State ex rel. Lambert v. Flynn, 348 Mo. 525, 154 S. W. 2d 52.

We are unable to agree with the contention of appellants. The case of State ex rel. Lambert v. Flynn, supra, which they rely on, in our opinion not only does not support their contention, but on the contrary holds clearly that the members of the Board of Police Commissioners, although given the duty to *initiate* the proceeding by making application to the Board of Trustees for accidental disability benefits on behalf of a member of the police department, are not given any authority to *determine* whether an applicant is entitled to such benefits.

The above-mentioned case was an original proceeding in prohibition in the Supreme Court, brought by the members of the Board of Trustees of the Police Retirement System of St. Louis as relators, to prohibit a Circuit Judge of said city from proceeding with a suit against said relators which had been brought in the Circuit Court by one Meehan for accidental disability retirement benefits. The members of the Board of Trustees, as relators in the Supreme Court, contended that the Circuit Judge had exceeded his jurisdiction by attempting to quash a hearing before them on the same claim.

In its opinion in said case the Supreme Court pointed out that subsection (6) of section 9468, supra, gives to the Board of Trustees "exclusive original jurisdiction in all matters relating to or affecting the funds herein provided for, including, . . . all claims for an-

nuities, benefits, refunds or pensions under this law.'' Referring to the authority of the Board of Trustees, as well as the Board of Police Commissioners, the court said: ''Thus it will be seen, a proceeding before relators for accidental disability benefits, unlike one for ordinary benefits, cannot be instituted by the claimant, himself, but must be initiated by a member of the separate board of police commissioners. There is good reason for this last requirement, where the claim is for accidental disability benefits. The board of police commissioners are in direct charge of the police and in a better position to know or find out the facts with respect to the accident and the character of the claimant. The circumstance that the president of the board of police commissioners is a member ex officio of the board of trustees *does not dispense with the requirement that a member of the former board initiate the proceeding, though, of course, we do not mean to say they determine it.''* State ex rel. Lambert v. Flynn, 348 Mo. 525, 528, 154 S. W. 2d 52, 54, 55. (Emphasis ours.)

State ex rel. Cook v. Glassco et al., Mo. App., 161 S. W. 2d 438, was a proceeding in certiorari brought in the Circuit Court of the City of St. Louis by Francis G. Cook, as relator, against John H. Glassco and others, as members of the Board of Trustees of the Police Retirement System of St. Louis, to quash the record of said Board disallowing the relator's claim for accidental disability benefits as a member of the Police Retirement System. There was a judgment in the trial court for the relator and the members of the Board of Trustees appealed. In that case it was contended by the relator that the authority to determine his eligibility for accidental disability benefits was vested solely in the Board of Police Commissioners and that the Board of Trustees had no authority to determine his eligibility, but was authorized only to determine the amount of the benefits. In reversing the judgment this court held that the construction of the statute contended for by the relator ran counter to the express terms of the statute. In that case this court said: ''The statute clearly and unequivocally vests in the board of trustees 'exclusive original jurisdiction in all matters relating to or affecting the funds herein provided for, including, in addition to all other matters, all claims for annuities, benefits, refunds or pensions under this law.' It is true the power to initiate ▮▮▮ proceedings for the allowance of accidental disability benefits, by making application to the board of trustees, is vested in any member of the board of police commissioners, *but this does not mean that such member has power to determine the facts upon which the allowance of benefits depends. That power is vested exclusively in the board of trustees.* State ex rel. Lambert v. Flynn, [348 Mo. 525], 154 S. W. 2d 52, loc. cit. 54.'' State ex rel. Cook v. Glassco et al., Mo. App., 161 S. W. 2d 438, 440. (Emphasis ours.)

In the case at bar the members of the Board of Police Commissioners based their refusal to make application for accidental disability benefits on behalf of Kilker on the medical report furnished to them by Dr. Charles Sherwin, medical director of the police department. It is true that Dr. Sherwin's report, after setting forth his findings, concluded with his opinion that Kilker was not wholly disabled for police duty, but that he was then and had been for several months able to do regular police work. However, it must be remembered that Dr. Sherwin was not a member of the Board of Trustees and was not a member of the Medical Board and in no manner connected with said Board.

We again call attention to subsection (11) of section 9468, supra, which provides: "The board of trustees shall designate a medical board to be composed of three physicians who shall arrange for and pass upon *all* medical examinations required under the provisions of this article, shall investigate *all* essential statements and certificates made by or on behalf of a member in connection with an application for disability retirement and shall report in writing to the board of trustees its conclusions and recommendations upon all the matters referred to it." (Emphasis ours.)

Subsection (5) of section 9469, supra, provides for the allowance of disability retirement benefits by the Board of Trustees to a member of the police department for accidental disability benefits "provided that the *medical board* shall certify that such member is mentally or physically incapacitated for further performance of duty . . . " (Emphasis ours.)

From a review of the statutes governing the Police Retirement System we are of the opinion that the Medical Board of the Board of Trustees is the only agency authorized to conduct physical examinations of members of the police department to determine whether or not they are entitled to accidental disability benefits. Neither the Medical Director nor the Board of Police Commissioners is authorized to determine such matters. The duty of the members of the Board of Police Commissioners to make application on behalf of a member who applies for accidental disability benefits is a ministerial duty which merely initiates the proceeding on behalf of the applicant. The failure or refusal of the Board of Police Commissioners to make application for accidental disability benefits on behalf of a member who requests that such application be made results in a denial of the member's right to have his eligibility for such benefits determined by the Medical Board and the Board of Trustees, to which agencies exclusively the Legislature gave that power.

Our writ of certiorari should be quashed, and the judgment of the circuit court affirmed. It is so ordered.

All concur except *Gantt, J.,* absent.