John R. ELLIS, Respondent,

v.

**STATE DEPARTMENT OF PUBLIC
HEALTH AND WELFARE,**
Appellant.

**No. 44976.**

Supreme Court of Missouri.

En Banc.

Nov. 14, 1955.

Rehearing Denied Jan. 9, 1956.

John M. Dalton, Atty. Gen., Paul Mc-Ghee, Asst. Atty. Gen., Elmore G. Crowe, Alfred M. Mansur, Jefferson, for appellant.

David C. Black, Robert A. McIlrath, Flat River, C. M. Buford, Ellington, for respondent.

HYDE, Judge.

This is a proceeding to review the action of the State Division of Welfare removing respondent (hereinafter called claimant) from the aid to dependent children rolls as not being physically incapacitated. This action was affirmed on appeal to the Director of the Department of Public Health and Welfare (hereinafter called Director); but on appeal to the Circuit Court of Reynolds County, the court found that claimant "did not have a fair hearing in the cause nor a fair determination on the record" and it was remanded to the Director "for further hearing and redetermination of the issues." This order was affirmed on appeal to the Springfield Court of Appeals. Ellis v. State Department of Public Health and Welfare, Mo.App., 277 S.W.2d 331. The case was transferred here on application of the Department.

Section 208.040 (statutory references are to RSMo and V.A.M.S.) after 1951 (Laws 1951, p. 755) authorized aid to dependent children to be granted to a parent when children under the age of sixteen years (regularly attending school)

have been deprived of parental support by reason of physical incapacity of a parent. Since the only issue in this case is whether respondent is physically incapacitated, other requirements of this statute will not be stated; except that as to physical incapacity, it was further provided: "when benefits are claimed on the basis of physical or mental incapacity of a parent, the probable duration of the physical or mental incapacity must be three months or more, and if the incapacity is not obvious, such incapacity shall be certified to by competent and appropriate authority designated by the division of welfare. Benefits may be granted and continued for this reason only while it is the judgment of the division of welfare that a physical or mental defect, illness or disability exists which prevents the parent from performing any substantially gainful activity." Section 208.050 provides: "Aid to dependent children shall not be granted or continued with respect to any child * * * (2) Who is living in a home with a parent and stepparent, both of whom are able-bodied." Section 208.060 requires that "application for aid to dependent children shall be made by the person with whom the child will live while receiving aid." A claimant may appeal if benefits are cancelled and have a hearing in the county of his residence conducted by the Director or a referee appointed for such purpose. Sec. 208.080 as amended Laws 1951, p. 772. Thus it is the physical ability of the parent to work and not what he actually earns that is the decisive factor.

▉ The review in this kind of case in the circuit court is "upon the record of the proceedings had before and certified by the director." Sec. 208.100(4). Appeals from the circuit court are likewise "upon the record in the same manner as * * * appeals from the director to the circuit court." Sec. 208.110. Remand to the Director is authorized if the court decides "that a fair hearing and determination of the applicant's eligibility and rights under this law was not granted. * * *. or that his decision was arbitrary and unreasonable." Sec. 208.100(5). We considered this language in Howlett v. Social Security Commission, 347 Mo. 784, 149 S.W.2d 806, 810, saying, "We cannot and we do not say that the Commission's decision upon the facts is arbitrary and unreasonable simply because we might possibly have found the facts differently upon the same evidence; this was within their province alone. But if the ultimate decision of the commission is not based upon substantial evidence, the finding must be characterized as arbitrary and unreasonable and the determination reversed." Following this decision, we have held: "If the findings and order of the Director are supported by substantial evidence in the record before us, we may not disturb the judgment appealed from and must affirm it." Collins v. Division of Welfare, Mo.Sup., 270 S.W.2d 817, 819; See also 81 C.J.S., Social Security and Public Welfare, § 27, p. 62 and Missouri cases cited. This is a narrower review than that provided by Sec. 22, Art. V, 1945, Const. V.A.M.S. applicable to all final administrative decisions "which are judicial or quasi-judicial and affect private rights"; and which further provides that review by the courts shall include, "in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." See Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647.

However, our conclusion is that this broader review is not applicable to benefits authorized by Sections 208.010 and 208.040. (Placed on same basis by Sec. 208.060.) In the Howlett case, supra, 149 S.W.2d, loc. cit. 812, we said: "Old age assistance benefits are not payments to which a citizen is entitled as a right. They are themselves gratuities given by the state to the needy, and as long as the principle of classification is a reasonable one, the legislature may deny them to one class while granting them to another." It is further stated in Hardy v. State Social Security Commission, Mo.App., 187 S.W.2d 520, 523: "Old age assistance is a gratuity of the sovereign. It is a creature of the statute and not a right that a claimant may

demand. The legislature can grant it or withhold it at will, or it may grant it with such reservations and under such conditions as it deems proper. Such restrictions, if reasonable, are binding upon the commission and upon the courts." See also 81 C.J.S., Social Security and Public Welfare, § 16, p. 41. Sec. 38(a), Art. III, 1945 Const. classifies old age assistance and aid to dependent children as a grant of public money.

While persons who meet eligibility requirements of public assistance acts are entitled to receive grants "pursuant to reasonable and legally authorized rules and regulations fairly administered, and without undue discrimination or preferences", nevertheless "recipients or applicants have no inherent or vested right in the public assistance they are receiving or desire to receive", and "the matter of extending, expanding, curtailing, or withdrawing public assistance is one of public policy only." Senior Citizens League v. Department of Social Security, 38 Wash.2d 142, 228 P.2d 478, 483; see also Newland v. Child, 73 Idaho 530, 254 P.2d 1066, 1070. Thus there are no vested rights because the Legislature, at any time, may abolish all such benefits. However, there may be vested rights in allowances that have already accrued. See Creighton v. Pope County, 320 Ill.App. 256, 50 N.E.2d 984. It is also true that "if a government sets up provision for a gratuity or bounty that is given as a matter of grace within the conditions specified, it has full power to create or to vest in an existing administrative agency authority to determine whether the conditions are met as a matter of fact and to deny resort to judicial review as a matter of right." State ex rel. Westbrook v. Oklahoma Public Welfare Commission, 196 Okl. 586, 167 P.2d 71, 73; see also Helms v. Alabama Pension Commission, 231 Ala. 183, 163 So. 807, 808. The Supreme Court of Illinois in Hughes v. Illinois Public Aid Commission, 2 Ill.2d 374, 118 N.E. 2d 14, 17, 43 A.L.R.2d 1421, held "there are no vested rights in a gratuitous pension granted by the State where such pension is not granted in contractual requital

and as consideration for services rendered or some other valuable consideration"; and that in such cases, because there are no vested rights, the Court "must decide the issues on the law as it stands at the time of our decision and not as of the time the cause of action accrued or of the time of the trial court's decision." See also Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 842, 78 L.Ed. 1434. In State ex rel. Police Retirement System v. Murphy, 358 Mo. 854, 224 S.W.2d 68, 72, we held that "the police retirement act confers upon a beneficiary legal rights in the pension fund which the board may not deny without due process of law, and that such rights are 'private rights' within the meaning of Art. V, Section 22." We pointed out this was true because "all such benefits flow from private rights created by the act, and not as gratuities from the board", since "the funds from which benefits are paid are collected in part from contributions made by the members." Workmen's Compensation cases requiring review under Art. V, Sec. 22 are not in point because Workmen's Compensation is contractual in nature and not in any sense a gratuity. DeMay v. Liberty Foundry Co., 327 Mo. 495, 37 S.W.2d 640. Our conclusion is that "private rights" covered by Art. V, Sec. 22, 1945 Const. are rights in the nature of property rights or fundamental civil rights protected by the Bill of Rights of our state and federal constitutions. Since such rights are not involved herein, we must hold that the review provided by Art. V, Sec. 22 is not applicable and that the review in this case must be on the basis provided in the above mentioned statutes.

The material facts of this case as stated by the Court of Appeals, 277 S.W.2d, loc. cit. 334, are as follows: Claimant (57 years old) said that he had worked "at purt near everything under the sun" in his "younger days" but that he had had no "regular employment since 1943." According to claimant, he had "what they call * * * broken down nerves", impaired hearing, continual pain in his neck which "sometimes * * * hurts so bad it makes my head hurt", "weak bad spells", neuritis and

rheumatism. He had lost his right index finger and two joints of his right middle finger in a saw mill accident four or five years before the hearing. Dr. J. R. Pyrtle of Centerville, Missouri, testified that, in his opinion, claimant was not " 'physically able to hold down a regular job of work that would require manual labor.' " (His findings included low blood pressure, weakness, tremor, palsied, coordination centers not proper, dizzy spells, neuritis, arthritis and rheumatism.) In short, claimant's evidence substantially supported his contention that he was physically incapacitated for manual labor—the only character of work he was fitted to do. (He said his loss of fingers in the saw mill was due to a dizzy spell.)

Three exhibits, all on printed forms, were "made a part of the record" by the referee. One was a "medical report" from Dr. R. C. Engelhardt of Poplar Bluff, to whom claimant had been sent by the county director for re-examination. The doctor concluded that claimant had "no disability." Another exhibit was a form "certification" from Dr. Engelhardt that "this person does not have a physical or mental disability which renders him incapacitated to work in the usual manner at any occupation for which his age, training, experience, or education would fit him." Both the "medical report" and the "certification" were dated July 19, 1952. The third exhibit, dated August 1, 1952, was described as a "report of the medical review team" in Jefferson City. The county director, who was the only witness for the Division, testified that he had forwared the "medical report" of Dr. Engelhardt (together with "some previous medical reports" not in evidence) to the medical review team, which "is made up of two people, a doctor and a welfare worker, who observe and review the medical information submitted to them and * * * make a decision on whether sufficient physical incapacity exists to justify public assistance."

The county director testified that claimant had "owned a truck and a small saw mill until after the case was closed"; that he had "sold wood to the charcoal plant",

"the fire wood around Centerville" and "ties to the Moss Tie Company at Glover"; and, that the records of the charcoal plant and the tie company (none of which were produced at the hearing) showed that, during a period of six months ending in June, 1952, claimant has sold "an average of one load of ties and one load of cord wood" each week and had earned about $35 per week. However, the county director also said that claimant's 17 year old son, living in the home, owned a truck and a power saw and worked with him. He said: "I understand he buys timber and the two of them cut it and truck it to the charcoal plant." Apparently, this was also true of sawing ties. Thus, while this evidence indicates income produced by both of them working together, it did not show much as to claimant's physical ability to do manual labor.

Therefore, it is apparent that claimant had substantial evidence of physical incapacity which would prevent him "from performing any substantially gainful activity" and deprive his children of parental support; and that there was no substantial evidence in the record to show there was no such physical incapacity unless the medical report and certificate of Dr. Engelhardt was admissible. In fact, the record indicates the Department representatives considered that this certificate settled the matter and no further showing on their part was necessary. Appellant still makes this contention and our attention is now called to the amendment of Section 208.-040 by the 68th General Assembly, H. B. 107, Sec. 1, V.A.M.S., so that the certificate requirement now reads as follows: "The physical or mental incapacity must be certified to by competent medical or other appropriate authority designated by the division of welfare, and such certificate is hereby declared to be competent evidence in any proceedings concerning the eligibility of such claimant to receive aid to dependent children benefits."

■■■ We think it is clear that a certificate of physical incapacity by a designat-

ed authority may be required by the Legislature as a condition precedent to receiving these benefits. See State ex rel. Lambert v. Padberg, 346 Mo. 1082, 145 S.W.2d 123; State ex rel. Eagleton v. Hughes, 355 Mo. 38, 194 S.W.2d 307; Creighton v. Pope County, 320 Ill.App. 256, 50 N.E.2d 984, 990. We also believe the reasonable construction of this provision of Section 208.-040 is that such a certificate is required before anyone can get on the rolls to receive the benefits provided and that it would be necessary to prove that such a certificate had been granted in any proceeding to collect such benefits. (Apparently claimant was so certified when he was granted these benefits in 1951, as indicated by references to previous medical reports. Therefore, of course, the certificate of incapacity would be admissible in evidence for that purpose. Sec. 208.080 also authorizes appeals when an application is disallowed in whole or in part or if any benefits are modified.) However, removing a claimant from the rolls is an entirely different matter. There is no provision in the statutes for a certificate of physical capacity to perform a gainful activity; the only certificate mentioned is a certificate of physical incapacity and that is the certificate made admissible in evidence by the recent amendment. There would be no reason for a hearing on removal from the rolls (total cancellation of benefits) if the result was to be determined by a certificate of physical capacity. The certificate admitted in this case stated: "this person does not have a physical or mental disability which renders him incapacitated to work in the usual manner at any occupation for which his age, training, experience, or education would fit him." That, of course, was the controlling issue to be decided in the hearing. We agree with the Court of Appeals, 277 S.W.2d, loc. cit. 335, that hearings such as the one herein involved should be governed by the rules of evidence as applied in civil cases; and we hold this certificate was not admissible. This is likewise true of the report of the medical review team which repeated the statement of the certificate.

However, the medical report is different because it states facts as found by Dr. Engelhardt and his expert opinion based on these facts. See Long v. United States, 4 Cir., 59 F.2d 602. We think it would be admissible upon a proper showing under the Uniform Business Records as Evidence Law, Section 490.660–490.690. See Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663; Gray v. St. Louis-S. F. R. Co., 363 Mo. 864, 254 S.W.2d 577; Conser v. Atchison, T. & S. F. R. Co., Mo. Sup., 266 S.W.2d 587. Nevertheless, if admitted on proper showing, it only would be evidence to be considered and weighed by the Director (as the finder of facts) with the other evidence in the case. It is apparent from this record that instead of such consideration the certificate based on this examination was deemed to be conclusive. See statements made by the referee set out in the Court of Appeals opinion, 277 S.W. 2d, loc. cit. 335. Likewise, the statement of facts in the Director's decision and order completely ignores the testimony of claimant's doctor and does not even mention that he had any medical evidence. The decision emphasizes the view that physical incapacity "be certified to by competent and appropriate authority designated by the division of welfare"; and the decision clearly indicates that it is based on the certification that claimant was not incapacitated. While as we have stated, a certificate of physical incapacity is necessary as a condition precedent to being placed on the rolls to receive benefits, nevertheless, a certificate of physical capacity does not automatically remove one from the rolls and conclusively deprive him of the right to receive benefits. It requires competent substantial evidence to do that, after claimant has made a prima facie case. Of course, a claimant has the burden of proof, McBee v. State Social Security Commission, Mo.App., 188 S.W.2d 349, and as the Court of Appeals held, in this case, any "fact finding administrative agency, passes upon the credibility of the witness and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of the claim." 277 S.W.

2d, loc. cit. 338. However, the Director's decision in this case indicates that it was not based on credibility of claimant's evidence. We must hold that there was no competent substantial evidence produced by the Division of Welfare at the hearing in this case and, therefore, the decision based on the view that the certificate of physical capacity was conclusive, was arbitrary and unreasonable.

The judgment of the circuit court is affirmed as to result only (for reasons see Court of Appeals opinion, 277 S.W.2d, loc. cit. 338, and the cause is remanded to the Director of the Department of Public Health and Welfare for redetermination of the issues.

All concur.

### On Motion for Rehearing

▮ Appellant misconstrues our opinion as holding that a person cannot be removed from the public assistance rolls upon a certificate of capacity to perform a gainful activity. What we said on this subject applied to the admissibility of such a certificate as evidence in a hearing on an appeal from the action of the Director of Welfare removing a person from the rolls. It has no application whatever to administrative action by the Director of Welfare in removing a person from the rolls. Of course, the Director of Welfare may and should frequently have all recipients of public assistance investigated, and act in accordance with his judgment upon the facts disclosed by such investigation. Sec. 208.130. If there is no appeal, his action is final (subject, of course, to his future action based on changed conditions) and thereafter no question can arise concerning the basis of his action. We only have held that if a claimant is removed from the rolls for aid to dependent children, by the Director of Welfare, and takes an appeal, then, if at the hearing the claimant produces credible, competent, substantial evidence sufficient to make a prima facie case of physical incapacity, the burden of going forward with the evidence to show his physical capacity to engage in gainful activity shifts to the Division of Welfare; and that the Director of Public Health and Welfare must make his decision upon consideration of all the competent evidence produced at the hearing.

▮ Appellant also complains of our rulings that the rules of evidence as applied in civil cases, govern proceedings in public assistance appeals hearings; and that medical reports stating facts are admissible under the Uniform Business Records as Evidence Law, Secs. 490.660–490.690; saying that compliance with such requirements would impose too great a burden on the Division of Welfare. As to the first complaint, it is sufficient to say that inadmissible evidence is not substantial evidence, which, as we pointed out, is necessary to sustain a decision. Of course, this does not mean that any case will be reversed for improper admission of evidence. Instead, the court, as authorized in all nonjury cases by Section 510.310, will consider all the evidence duly preserved (whether admitted or not), which it finds to be admissible, and decide the case on such evidence.

▮ As to the latter complaint, we think appellant overestimates the supposed difficulties of making a proper showing under the Uniform Business Records Act. (For a discussion of essential requirements see Hospital Records and "The Business Records as Evidence Law"—Caruthers and Gilcrest, 6 St. Louis Bar Journal 39, Oct. 1955.) Appellant says it cannot comply with these requirements without having as witnesses the examining doctor or his employee who prepared the report. Of course, the report must be identified by someone before it is admissible and Section 490.680 makes sufficient the identification by a custodian or other qualified witness who testifies to its identity and mode of its preparation; and it is then only necessary also to show that it was made in the regular course of business at or near the time of the examination. Certainly this does not require the doctor who made the report to be a witness, as provision is specifically made for any qualified witness

to testify to the essential facts and this could be done by deposition, or settled at a pretrial hearing. Appellant argues that we should hold this report admissible under the exception to the hearsay rule described in Long v. United States, 59 F.2d loc. cit. 603 and seems to have the idea that such a ruling would remove all requirements of identification and showing as to preparation. However, the Business Records Act recognizes and is based on the very exception to the hearsay rule for which appellant contends; but it broadens its application and makes the requirements for identification and admissibility simple, definite and certain. See 9 Uniform Laws Ann. 385; 20 Am.Jur. 881, Sec. 1043, note 8 and cumulative supplement thereto; 5 Wigmore on Evidence, 3rd Ed. 361, Sec. 1520. "A writing standing alone does not 'of itself constitute evidence; it must be accompanied by competent proof of some sort from which the jury can infer that it is authentic and that it was executed or written by the party by whom it purports to be unless such facts are admitted by the adversary". 20 Am.Jur. 776, Sec. 922. Thus in holding the Business Records Act applicable, we really are holding the report admissible under the exception to the hearsay rule which appellant invokes. That Act provides the requirements for admitting reports admissible under such exception; and it would not simplify matters to say it is an official report. See discussion of necessary showing for introduction of official reports in Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239; 5 Wigmore 517–524, Secs. 1633–1633a. In view of the statement of Wigmore (Sec. 1520) that the reason for the Uniform Act was "the application of this Exception had gradually developed a mass of detailed petty limitations that have no relation to the practical trustworthiness of the documents offered", our view is that it prevents rather than creates difficulties, for appellant, to hold that the Business Records Act is applicable to such medical reports.

The motion for rehearing is overruled.

All concur.