Charles Ralph BARNES, Respondent,

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,**
Appellant.

No. 22852.

Kansas City Court of Appeals.
Missouri.
Jan. 12, 1959.

John M. Dalton, J. Burleigh Arnold, Jefferson City, for appellant.

Robert L. Ross, Albany, for respondent.

SPERRY, Commissioner.

Ralph R. Barnes, hereafter referred to as plaintiff, applied for and received aid to dependent children benefits from the State between October, 1954, and April 10, 1957, when he was removed from the rolls by order of the Director of Public Health and Welfare. Claimant appealed and a hearing was had on July 25, 1957, before a referee.

Thereafter, the Director of the Department of Public Health and Welfare determined plaintiff to be ineligible for aid to dependent children. Claimant appealed to the Circuit Court and the cause was reversed and remanded to the Director of Public Health and Welfare for redetermination. The Department, which will be referred to herein as defendant, has appealed.

The transcript of the hearing before defendant discloses that plaintiff's age, on the date of the hearing, July 25, 1957, was 47; that he lived in a farm house with his wife and ten children, the eldest being eleven; that, in 1954, he had been approved by defendant for aid to dependent children but, on April 10, 1957, he was removed from the rolls by defendant for the stated reason that he was not so physically disabled as to be eligible to receive aid. The record also discloses that plaintiff was, at the time of the hearing, confined to the United States Veterans Hospital; that he had not been gainfully employed for three or four years; that the couple owned no real estate; that they owned some household goods and a 1946 automobile; that he receives compensation from the veteran's administration in the sum of $17 per month; and that Gentry County had provided the family with several orders of groceries, beginning May 1, 1957, and totaling more than $87.

Mrs. Barnes testified to the effect that plaintiff had done no labor for three years; that he had only an 8th grade education and had never done any work except farm labor for others; that she had an 8th grade education and had never worked outside of the home; that plaintiff required special food, could eat nothing fried, no starches, ate toasted bread, soups and boiled meat; that he had "sinking spells," would "throw up," "pass out"; that he had such an experience two weeks prior to the hearing and had them every day for a week; that he was almost unconscious, scarcely knew the doctor; that she could not detect his pulse; that such illness came on him when he had done hard work or lifting of any kind, such as carrying water one-fourth mile for the family; that he had been like that for two or three years and the spells grew more frequent; that he has running sores on his toes and feet, due to diabetes; that he frequently vomits, and his chest pains him at night, requiring the attention of witness; that he suffers from headaches. On cross examination she stated that Dr. Pray, (D. O.) had been treating him for "his heart and ulcers."

Dr. Matteson, (M.D.) testified to the effect that he first examined plaintiff three years before and X-rayed the chest; that, from that examination, he believed that plaintiff had chronic bronchitis and some pulmonary emphysema; that he was not then able to do heavy farm work; that he had again examined him on April 30th, 1957, and found plaintiff's condition to be essentially the same as it had previously been; that he was wholly unable to do work involving exertion or inhalation of dust; that he saw no prospect of improvement. On cross examination he stated that he had seen plaintiff professionally between said dates; that witness disagrees with a report from a clinic where plaintiff was sent by defendant for examination; that the clinic people only saw him once; that plaintiff's true condition would not be shown by "bronchoscope"; that he cannot work at heavy labor because he cannot get enough air in his lungs; and that dust would cause his condition to worsen.

Dr. Pray testified to the effect that he treated plaintiff two weeks before hearing, for a heart attack; that he recommended treatment at the United States Veterans Hospital, where he later was admitted; that an injury to his hand had failed to heal because of diabetes; that an injured finger may have to be amputated for that reason; that he had treated plaintiff off and on for years; that he suffers from angina pectoris, diabetes, and duodenal ulcers; that he is wholly unable to do manual labor; that he weighs 123 pounds, is five feet seven inches tall, very poorly nourished because he cannot eat.

Mrs. Redman, a case worker for the Department, testified that she had the Depart-

ment files on plaintiff's case; that the Department sent him to a clinic for examination; that a written report of that examination is in the files. A document, referred to in the hearing as "this report, dated September 17, 1956, signed by William H. Ames, M. D." was offered in evidence. Plaintiff objected to its reception because no person had testified as to its identity or mode of preparation, or that it was made in the regular course of business of the clinic. The objection was overruled. Another "report" of the clinic, dated November 15, 1956, was received in evidence over objection. It was shown that both reports were a part of the "case record" and had both been received through the mail.

This witness further stated that such medical material, together with a social information summary, was sent to the medical review team for review; that the medical review team requested further medical examination and reports. The letter making such request was offered in evidence. It was objected to because hearsay, but was received. She stated that plaintiff again went to the clinic and a letter purporting to be the medical report thereof was offered and received in evidence, over objection. She further stated that, thereafter, Dr. Ames wrote the medical review board regarding the case and that letter was received in evidence, over objection. She further testified to the effect that, thereafter, the county welfare office received a letter from the medical review board, stating that plaintiff was medically ineligible for aid. Plaintiff's objection to the reception of this letter in evidence was overruled.

■ During the course of the hearing plaintiff's attorney suggested that plaintiff was not present because confined to the Veteran's Hospital and that there would be no objection to continuing the case. The Department's examiner asked counsel if he objected to the Department procuring a "report" from the hospital and making it a part of the record, "the result of the present examination." Counsel agreed. A letter was procured from a Veteran's Hospital social worker. This letter is in the record before us.

Plaintiff complains of the admission of the letter on the grounds that it is wholly hearsay and has no probative value. He says that he intended to agree that a *medical* report from the Veteran's Hospital might be made a part of the record, but did not intend to agree to the reception in evidence of a letter prepared by some unknown social worker, consisting of a rambling statement of alleged facts based on rank hearsay.

The writer of the letter stated that she had not seen plaintiff during his last hospital confinement. She purported to state certain facts which she had apparently obtained from some unknown person or persons, and also gave her conclusions as well as that of an unnamed doctor. She stated that the *physician* "saw some relationship between his complaints and the fact that * * * there was some talk of stopping his welfare grant." Whatever the letter may be, it does not constitute admissible evidence under *any* theory, including the uniform Business Records Act, unless it be by stipulation. The colloquy between counsel for plaintiff and the examiner clearly indicates that they stipulated for the filing of a "report" which, as the examiner said, would show "the result of the present examination." Surely, the examiner meant a medical report. The letter is not such a report. It was not, at the time of the hearing, a part of the files of the Department. It should not have been considered, or made a part of the record in this case.

■ The evidence on behalf of plaintiff established, *prima facie,* that he was physically incapacitated for manual labor—the only character of work he was fitted to do. Ellis v. State Department of Public Health and Welfare, 365 Mo. 614, 285 S.W.2d 634, 639. If plaintiff's evidence is all of the competent evidence in the case, (that is, admissible evidence) then the Director acted ar-

bitrarily in denying the application, because he must make his decision upon consideration of all of the *competent* evidence produced at the hearing. Ellis v. State Department of Public Health and Welfare, supra, 285 S.W.2d 641.

■ The only evidence in the record which tends to support the Director's finding and order consists of letters and documents, above referred to, which were in the files of the Department. They were admitted into the record without any evidence of identification or mode of their preparation, which is essential to establish their competence and admissibility. Section 490.-680 RSMo 1949, V.A.M.S.; Ellis v. State Department of Public Health and Welfare, supra, 285 S.W.2d 641, 642; Vol. 2, Jones on Evidence, 5th Ed., pages 558, 599; 20 Am.Jur. 776, 777; State v. Rohman, Mo., 261 S.W.2d 69, 73.

The Court, *en banc*, in Ellis v. State Department of Public Health and Welfare, supra, (motion for rehearing denied January 9, 1956) held that documents such as are here involved are not admissible in evidence, in a hearing on an appeal from an order removing one from the rolls of those eligible to receive aid to dependent children, unless such documents are identified and there is evidence as to the mode of their preparation and authenticity. There is no such evidence in this case. Defendant contends that they are admissible merely because they are in its files. That is not the law.

■ Defendant cites and relies on Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022, as authority for its position. The Court considered the admissibility in evidence of a hospital record and, on page 666 of 285 S.W.2d, said that before such records are admissible there must "of course" be a preliminary showing of the identity of the record, the mode and time of its preparation, and that it was made in the regular course of business. The opinion was handed down (Division 2) on January 9, 1956, the same day that the motion for rehearing in the Ellis case was overruled. There is no conflict between the rulings in those cases. In both, the Court held that records, to be admissible in evidence, must be identified and authenticated by competent witnesses, which was not done here. The Director's order was not based on *any* competent evidence.

The judgment of the Circuit Court reversing the decision of the Director of the State Department of Public Health and Welfare and remanding the cause to the State Department of Public Health and Welfare for redetermination of the issues should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.