F. Lyman DAVIS, Plaintiff-Respondent,

v.

I. A. LONG, Fielding P. Childress, Herman Willer, Joseph L. Glynn, and Raymond R. Tucker, as Members of the Board of Police Commissioners of the City of St. Louis, Missouri, Defendants-Appellants.

No. 31056.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Thos. J. Neenan, Aubrey B. Hamilton, and Eugene P. Freeman, St. Louis, for appellants.

Morris A. Shenker, Bernard J. Mellman, Murry L. Randall, St. Louis, for respondent.

GEORGE P. ADAMS, Special Judge.

On October 11, 1955, plaintiff-respondent, then a Lieutenant with the City of St. Louis Police Department, was suspended from duty following the return of an indictment charging him with accepting bribes. In early October, 1956, he was acquitted of these charges in the Circuit Court. On October 15, 1956, defendants-appellants, the then Board of Police Commissioners of the City of St. Louis (hereinafter referred to as the "Board") ordered plaintiff restored to duty without loss of rank, but ordered that plaintiff forfeit his wages during the period of his suspension. On October 16, 1956, plaintiff returned to duty on the afternoon watch.

On November 14, 1956, plaintiff filed his Petition for Review in the Circuit Court of the City of St. Louis, seeking a reversal of the Board's decision of October 15, 1956, complaining that it was "arbitrary, unreasonable, void and invalid" because: (1) No charges were filed against plaintiff; (2) No hearing was held; (3) The decision was unsupported by any probative, competent or relevant evidence; (4) It was an abuse of the Board's discretion; (5) It was without due process of law and a denial to plaintiff of equal protection of the law; and, (6) It was violative of Section 536.090 RSMo 1949, V.A.M.S., in that it did not include and was not accompanied by any findings of fact or conclusions of law.

On November 30, 1956, the Board filed a Motion to Remand the cause to it so that a formal hearing and full trial could be held by the Board. Plaintiff filed a Motion to Strike the Board's Motion to Remand and to require the Board to file the record of proceedings relating to him.

The Motion to Strike was based on plaintiff's contention that the Motion to Remand sought to "prevent" the plaintiff "from

having a full and adequate review of the decision of the Board" and sought to "prevent the Court from hearing all the evidence and rendering a decision thereon, all in accordance with the provisions of Section 536.140, R.S.Mo. 1949."

The motion to require the filing of the "record of proceedings" was based on the provisions of Section 536.130, RSMo 1949, V.A.M.S.

In response to an order of court "requiring defendants to submit to the court a written statement that no record of a hearing exists concerning a controversy" between plaintiff and the board, the board filed its "return" to said order, stating that "no hearings in the sense contemplated by Section 536.060, Revised Statutes of Missouri, 1949, in a contested case before an administrative body or board" was had and no such record existed.

On January 25, 1957, plaintiff withdrew his motion to require the Board to file record of proceedings, and a hearing was held on plaintiff's Motion to Strike the Board's Motion to Remand. On October 31, 1957, said Motions to Strike and to Remand were overruled.

On December 18, 1957, plaintiff's Petition for Review was heard and taken under advisement. On April 3, 1961, the trial court found that the board's decision was "rendered without the institution of any charges or specifications against the plaintiff, without a hearing or the reception of any evidence, and without the opportunity to be heard," and that the decision "was and is unsupported by competent evidence upon the whole record," and ordered that the decision be "reversed".

Two witnesses testified at the hearing below. Colonel James E. Thompson, Inspector of the St. Louis Metropolitan Police Department, was called as a witness for the board. Plaintiff testified in his own behalf.

Prior to October, 1955, plaintiff had been indicted by a grand jury for accepting bribes from a prostitute in his district. On October 11, 1955, he was suspended from duty as a result of the indictment. The specific grounds for the suspension are not disclosed by the record. Apparently the suspension was not contested.

In early October, 1956, plaintiff was acquitted of the charges, by a jury. Around the 5th, 6th or 7th of October, 1956, plaintiff contacted Thompson to find out how to be reinstated. Thompson told him that the Board would have to make a decision as to whether plaintiff could go back to work or not. Prior to October 8, 1956, Thompson had presented to the board a report, including a transcript of the criminal proceedings against plaintiff, and also police reports concerning "alleged" activities of plaintiff. On October 8, 1956, Thompson was summoned before the board and instructed to tell plaintiff "that he could make application for reinstatement and it would be considered by the Board and probably he could be reinstated without losing rank in view of the fact that he had been acquitted in court, but that the Board felt that there was enough there to show that he had probably been neglectful and that he probably wouldn't be paid for the time under suspension." On the 9th, Thompson called plaintiff into his office and "informed him of what the Board had said." Plaintiff said he wanted to consult his attorney and was told that he should talk to his attorney and his family and make up his mind as to what he would want to do. During this meeting Thompson also told plaintiff that the board would take his application into consideration with the probability that without a trial they would restore him as a Lieutenant but without pay; that they would deny pay because there had been some "neglect and inefficiency on his part." Thompson also told plaintiff that he could have a trial.

Plaintiff talked with his attorney, and on October 12th he advised Thompson that he would have his application for restoration to duty in the morning mail. Thompson asked him what his attorney had said, and plaintiff said he stated "it was okay". On October 13th, Thompson received, through

department mail, plaintiff's application to be restored to duty, reading:

"Chief of Police, Jerimiah O'Connell.

"Sir: I respectfully request that I be assigned duties as soon as possible.

"(signed) Lieutenant Lyman F. Davis."

The application was given to Chief O'Connell, who took it before the board.

Pursuant to instructions from Thompson, plaintiff came to Thompson's office October 15th. The board was meeting that day and Thompson told plaintiff that the commissioners might want to talk with him. Plaintiff was not called before the board. Late in the afternoon, Chief O'Connell told Thompson to tell plaintiff that "the Board will reinstate him as a Lieutenant. He will be assigned to duty in the First District, but he won't be paid for the time under suspension." Thompson told plaintiff what Chief O'Connell had said. Plaintiff said that he didn't like "to lose that pay." Thompson advised him that the board "feels that there has been some neglect and inefficiency there on your part." On direct examination relative to the 15th of October, plaintiff was asked if Thompson told him that the board had made a decision or statement with regard to his pay, to which plaintiff answered: "No, I don't recall that at all." Later, on direct examination, plaintiff testified: "I believe it was on the 15th, Colonel Thompson informed me that I was going to go back to work but I was not going to be paid for the time of my suspension." On cross examination plaintiff testified as follows:

"Q. Now, at any time prior to the 15th (of October, 1956)—I mean prior to your making this written statement which is in evidence here, marked Defendant's Exhibit 2 (application for reinstatement)—did you know that you were going to be deprived of any pay? A. I don't believe I was informed of

that definitely until the evening of the 15th, that I wasn't to be paid.

"Q. You had some knowledge of it prior to that? A. Yes, Colonel Thompson had mentioned that the Board was considering that."

Thompson testified that he had plaintiff's badge and gun but told plaintiff to go on home and call his attorney and talk to his wife, and if he wanted to "go back to work under those conditions" to come in in the morning and get his gun and badge. Plaintiff testified that Thompson tried to get his badge and gun that night, but the office was closed; that he was told to come back in the morning and he would be given his badge and gun and was to report for afternoon watch in the First District. Thompson testified further that at this time he told plaintiff: "If you don't like it, you can have a trial"; also that he gave plaintiff a three-page report in which Thompson pointed out what he, Thompson, considered plaintiff's deficiencies; that plaintiff took the report. Plaintiff did not deny or contradict Thompson's testimony that he was told he could have a trial if he didn't like the action of the board or that he wasn't told to talk to his wife and attorney; nor did he deny receiving the three-page report on the 15th.

On October 16th, 1956, plaintiff came to Thompson's office and Thompson asked: "Do you want to go to work?" Plaintiff replied: "Yes." Thompson gave him his gun and badge and he started to work on the afternoon watch. On that same day, Thompson gave plaintiff a 23-page report, which he had submitted to the board. On the same day, plaintiff's Application for Reinstatement was returned to Thompson with a notation in O'Connell's handwriting, as follows: "Okay by Board, October 15, 1956. Restored to duty October 16, 1956. Transferred from Twelfth District to First District October 16, 1956."

■ On this appeal, the board contends that the information contained in Thompson's report to the board justified its finding

that plaintiff was guilty of inefficient police conduct and in penalizing him by forfeiture of pay. This report was offered in evidence by the board but was excluded upon objection by plaintiff. In its motion for new trial, this point was not preserved by the board and, of course, is not before us now.

Our Administrative Procedure and Review Act defines a "contested case" as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Section 536.010(3), RSMo 1949, Amended Laws 1957, page 748, effective August 29, 1957, V.A.M.S.; Civil Rule 100.01(3), effective April 1, 1960, V.A.M.R.

Section 536.060, RSMo 1949 until amended by Laws 1957, page 748, effective August 29, 1957, V.A.M.S., provided:

> "Prior to the final disposition of any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, but this shall not preclude the informal disposition of such cases by stipulation, consent order, or default, or by agreed settlement where such settlement is permitted by law."

Effective August 29, 1957, Section 536.063 et seq. RSMo 1959, V.A.M.S., provided for the procedure in a "contested case," by providing for pleadings, notices, hearings, etc.

Also effective August 29, 1957, Section 536.060, RSMo 1959, and effective April 1, 1960, V.A.M.S., Civil Rule 100.02, provided that nothing contained in Chapter 536 or Civil Rule 100 should "preclude the informal disposition of contested cases by stipulation, consent order, or default, or by agreed settlement," and further, that nothing in said chapter or rule should be construed "(3) to prevent the waiver by the parties * * * of procedural requirements which would otherwise be necessary before final decision."

The board contends that its action in forfeiting plaintiff's pay was not such an action as required a hearing, saying that Section 84.150 (all statutory references hereinafter, unless otherwise stated, are to RSMo 1959, V.A.M.S.) requires a hearing only where the removal of an officer is sought. In other words, it takes the position that the enforcement of the forfeiture of pay is not a "contested case" within the definition of Sections 536.010(3) and 536.060.

■ This court has ruled on this point adversely to the board in Scism v. Long et al., Mo.App., 280 S.W.2d 481, where it was held that a St. Louis City Police Officer acquires a right or title to the office "and emoluments" which are within Section 536.010(3). In that case, a police officer was reduced in rank from Sergeant to Turnkey and suspended without pay for six months. He was not "removed" from office as the board contends Section 84.150 must be limited to. Rank and compensation for services are "emoluments" of an office and are legal rights and privileges of the office within the meaning of Section 536.010(3). Webster's New International Dictionary, Second Edition, Unabridged, "Emolument", page 838; Sellers v. School Dist. of Upper Moreland, Tp., 385 Pa. 278, 122 A.2d 800, 801; State v. Dishman, 334 Mo. 874, 68 S.W.2d 797, 798(1).

■ Forfeiture of plaintiff's pay constituted a contested case, and prior to "final disposition" plaintiff was entitled to a hearing unless the matter was disposed of informally by "stipulation, consent order, or default, or by agreed settlement," or plaintiff waived his right to a hearing.

Although similar provisions are found in Administrative Law and Procedure Acts of several states, able counsel for the parties have apparently been unable to find where the provision for "informal disposition of such cases by stipulation, consent order, or default, or by agreed settlement" has been interpreted by the courts. An exhaustive, independent research on our part has likewise been unfruitful.

However, in this case the facts and circumstances clearly show that the question of plaintiff's reinstatement to duty was disposed of informally by an "agreed settlement".

Following his acquittal of bribery charges, plaintiff apparently felt that he was then eligible to return to duty. Upon his first inquiry about returning to work, however, he was made aware of the fact that his acquittal did not automatically restore him to duty, as he was told by Thompson that the board would have to make a decision as to whether or not he could go back to work.

After receiving Thompson's report, including a transcript of the criminal trial and copies of police reports concerning plaintiff's alleged "activities" on or prior to October 8, the board had arrived at a tentative conclusion that because plaintiff had been acquitted of bribery charges, he should be restored to duty without loss or reduction of rank, but that he had probably been guilty of neglect and inefficiency, so he should not be paid for the period of his suspension. On October 9, Thompson advised plaintiff of the board's "feeling" and told him that if he desired to be reinstated *without a trial* he could be restored as a Lieutenant but without pay. *Plaintiff was also told he could have a trial.* This was a clear "offer" to compromise which plaintiff could accept "without a trial"; or which he could reject and stand trial. Upon Thompson's suggestion, plaintiff consulted his attorney.

■ At this point, plaintiff knew that the reason for the board's conclusion that he should forfeit his pay was because it "felt" that he had been guilty of neglect and inefficiency, notwithstanding the fact he was acquitted of the bribery charges. He, his attorney, and his family were thereupon confronted with the choice of accepting the board's offer and returning to work immediately and continuing his career as a Lieutenant and lose a year's pay, or refusing reinstatement on the conditions of the offer and standing trial. If he chose the latter

course, he could end up with: (1) Full clearance, retention of rank and back pay; or (2) Dismissal from the force, ending his career and losing back pay, too; or (3) Reduction in rank, forfeiture of pay, fine, further suspension or "other appropriate action" or the combination of one or more of them. Section 84.170, RSMo 1959; Section 1, Rule 15, Manual, Department of Police of St. Louis, Mo.

Whether the "report" which the board had before it and upon which it reached its tentative conclusions would, if offered at a formal hearing, be objectionable as containing "hearsay", or, as a matter of fact, whether the information contained was true or false, is not relevant here. If it was. false, or if it was objectionable as containing hearsay, plaintiff did not have to accept the "offer" but could require the proof of the basis for concluding he was "neglectful" or "inefficient". He advised with his. very able counsel and they concluded, for reasons best known to them, that it would' be "okay" to apply for reinstatement, and to. accept the offer upon the conditions stated.

On October 12, plaintiff "accepted the offer" and placed his Application for Reinstatement in the department mail, which was received by Thompson on October 13.

Thereafter, on October 15, acting on plaintiff's acceptance of its previous offer, the board entered its order reinstating plaintiff to duty as a Lieutenant and requiring plaintiff to forfeit his pay for the period of his suspension.

On October 15, when plaintiff was told of the board's action, he was given a three-page report of what was considered his "deficiencies" and again told to go home and call his attorney and talk to his wife. He was also told that if he didn't like "it" (the board's action) he could have a trial; or if he wanted to go back to work under the conditions stated, he should report for duty the next morning.

With full knowledge of the conditions under which he was being reinstated, the

reasons for losing his pay, and after at least one consultation with counsel, plaintiff returned to duty. Plaintiff's contested case was thereupon disposed of informally by an agreed settlement by which plaintiff was bound.

All matters having been settled by agreement, plaintiff was not entitled to a formal hearing and is not now entitled to have the action of the board reviewed.

■ Without retracting from or in the least tempering our finding that there was an informal disposition by agreed settlement herein, we cannot help but observe that by his actions plaintiff has waived such "procedural requirements which would otherwise be necessary before final decision" as specifically authorized by Section 536.060 as amended by Laws of 1957 at page 748 (or as would have been recognized as a common law waiver without such specific statute). These "procedural requirements" included the procedure for formal charges and trial provided for in Rule 15 of the Police Manual.

In support of the trial court's action, plaintiff asserts that, in any event, whether his return to work constituted an acceptance of the condition that he forfeit his pay was a question of fact for the trial court.

■ The only testimony inconsistent with the facts as hereinbefore set out is the conclusion of plaintiff that he had not "agreed" that he be found guilty by the board, and that he would forfeit his pay. Plaintiff was asked: "I will ask you whether you ever agreed, Lieutenant Davis, either formally or informally, that you be found guilty by the Board of Police Commissioners and that you would forfeit your pay?" To which plaintiff answered: "No." In addition to the fact that this was a conclusion of the witness (the board's objection to it was overruled), it was so contrary to all the undisputed evidence in the case that, had it been considered by the trial court, it had no probative value. As it is our province on this appeal from a case

tried by the court (Section 510.310, RSMo 1959; Civil Rule 73.01; Ellis v. State Department of Public Health and Welfare, 365 Mo. 614, 285 S.W.2d 634, 641(17) ), we disregard that testimony as inadmissible. There was no "question of fact" for the trial court.

■ Finally, plaintiff contends that "anything short of an express agreement" does not meet "the requirement of Section 536.-060 for disposition of a contested case by 'agreed settlement.' "

■ We believe that to engraft, by judicial interpretation, such a limitation on the clear language of the Legislature and the Supreme Court does violence not only to judicial interpretation, but to the spirit and purpose of administrative procedure. Generally speaking, "administrative procedure is, and should be, simpler, less formal and less technical than judicial procedure. Certainly it should not be made more so in absence of a clear and specific mandate from Congress." Sherwood Bros., Inc. v. District of Columbia, 72 App.D.C. 155, 113 F.2d 162, 165(4); Albertson v. Federal Communications Commission, 87 U.S.App. D.C. 39, 182 F.2d 397, 401(5); 73 C.J.S., Public Administrative Bodies and Procedure, § 75, page 401.

■ It is inconceivable that a court of law, with its trained lawyers and judges, would find it necessary to engraft such a limitation on the right to informally dispose of a matter before it by an "agreed settlement". Laymen should not certainly be held to a higher "standard of legal precision." Lowenstein v. Newark Bd. of Ed., 35 N.J. 94, 171 A.2d 265.

Plaintiff's returning to work under the conditions of which he was aware was as reliable an "acceptance" of the offer of reinstatement by the board as an express oral or written "I accept."

■ A case "disposed of by stipulation, consent order or agreed settlement" is specifically excepted from the requirement of

Section 536.090 that a decision in a contested case be accompanied by findings of fact and conclusions of law. It was, therefore, unnecessary for the board to have made "findings of fact and conclusions of law."

The judgment of the trial court is reversed, and the decision of the defendant board is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.