Flora B. Thornsberry, Respondent, v. State Department of Public Health and Welfare, Appellant, No. 45416—295 S. W. (2d) 372.

Court en Banc, November 12, 1956.

*John M. Dalton,* Attorney General, and *Harld L. Volkmer,* Assistant Attorney General, for appellant.

*Claude T. Wood* for respondent.

[373]   HYDE, J.—This is an appeal from the judgment of the Circuit Court of Camden County reversing and remanding for redetermination the order of the Director of the Department of Public Health and Welfare (hereinafter called Director) removing Flora B. Thornsberry (hereinafter called claimant) from old age assistance rolls. The Springfield Court of Appeals reversed and remanded with directions to affirm the Director's order, two of the judges concurring only in the result and stating that they believed some of the findings

were arbitrary and unreasonable. (Thornsberry v. State Department of Public Health and Welfare, 285 S. W. 2d 77.) The case was transferred here on application of claimant.

Claimant had been on the rolls since 1938, receiving $44.00 per month, and was removed February 8, 1954. Claimant was 85, crippled from a paralytic stroke, and lived in Richland with her daughter, Mrs. Fay Thomas, whose husband died in 1944 leaving her with two children (claimant's grandchildren) to support. In 1954 Mrs. Thomas' daughter was 16, a junior in the Richland High School, and her son was 21, a third year engineering student at Missouri University. Mrs. Thomas owned the house in which they lived; and she was employed by the Richland Municipal Utilities. Investigation was begun by the Division of Welfare (hereinafter called Division) toward removing claimant from the rolls when it was learned that Mrs. Thomas received a salary increase of $25.00 commencing in 1954 and that Old Age and Survivor's Insurance of $18.80 per month was being received for her minor daughter because of her father's death. The reason given for the Division's action of February 8, 1954 was that "income from employment of daughter (of claimant) * * * is sufficient to meet all expenses of the entire household group". This action was based on a budget prepared by a case worker, showing three members of the household and considering the son self-supporting. After claimant appealed the budget was revised to consider a household of four, but including in the family income the son's earnings from summer employment. These budgets, claimant's evidence as to income and expenses, and the Director's finding of facts, are set out in the opinion of the Court of Appeals and we adopt them as a part of this opinion. Other facts will be mentioned in connection with the rulings hereinafter made.

█ The Director's conclusion from the facts found was that "there is sufficient income in the home to meet the needs of the family of claimant's daughter and to furnish [374] claimant a subsistance compatible with decency and health." Claimant contends this decision is arbitrary and unreasonable on two grounds, namely that the Director used and applied standard budget items without regard to the actual need of the family and that he refused to consider the needs of the son while attending Missouri University. These were the grounds stated by the Circuit Court for reversing the Director's order. The Circuit Court, as does claimant, relied on Hagy v. State Department of Public Health & Welfare, Mo. App., 259 S. W. 2d 101 as holding that standard budget items could not be used. Although, in that case, there is criticism of the use therein of the standard item for food (which criticism really seems to involve failure to allow for transportation) the real basis of that decision was that "the decision of the director was arbitrary and unreasonable in following the budget prepared by the case worker and ignoring the undisputed facts in this case." As we

read the Hagy opinion, most of the undisputed facts concerned the amount of income involved, which was overestimated (259 S. W. 2d, l.c 103), although taxes, repairs and some other items were listed in the budget as less than they actually were. In any event, Section 208.010 (statutory references are to RSMo. and V.A.M.S.) has been amended since the decision in the Hagy case (Laws 1953, p. 644) so that it now contains the following provision: "* * * The amount of benefits when added to all other income, resources, support and maintenance shall provide such persons with reasonable subsistence compatible with decency and health *in accordance with standards developed by the Division of Welfare.* * * *" This italicised clause added by this amendment unquestionably provides the authority to develop and use reasonable standards for some usual essential expense items such as food and clothing.

The reason for granting such authority has been pointed out by the Supreme Court of Washington in thus stating the problem of administering old age assistance: "In essence it is the problem of meeting, within the limits of a fixed fund established by biennial appropriations, the varying public assistance needs of an unpredictable number of recipients. The fund is static, but the number of recipients and the needs of each vary as they are affected by the impact of constantly changing economic and social factors. Not only must the administrative system established by the legislation cope with this problem, but it must do so in such manner that public assistance will be rendered on a fair and uniform basis, without undue delays, and within reasonable limits as to administrative expense.

"It is very evident that the desired results could be achieved only by conferring upon the administrative agency a large measure of power to find facts, establish standards and exercise discretion, controlled only by very general statements of legislative policy. This allows for the ascertaining and utilization of information which could not possibly be available to the legislature or people generally. It also makes possible the adjustment, from time to time, of the over-all program and its application to certain categories and situations, to take into account changing case loads, variations in average income and living requirements as affected by time, geographical location and other factors, and current prospects as to the sufficiency of funds." (Senior Citizens League v. Department of Social Security, 228 P. 2d 478, 489.)

■ Review in this case is on the record of the proceedings had before and certified by the Director. (Sec's. 208.100 (4) and 208.110). Reversal and remand to the Director is authorized by Sec. 208.100 (5) if his decision was arbitrary or unreasonable. (The only ground claimed herein.) We have held that only if the Director's decision is not based on substantial evidence, can his findings of facts and order based thereon be characterized as arbitrary or unreasonable and his determination [375] reversed for that reason. (Ellis v. State De-

partment of Public Health & Welfare, Mo. Sup., 285 S. W. 2d 634 and cases cited.) Therefore, the only question to be determined herein is whether the findings and order are supported by substantial evidence.

The Division has Rule 47 (offered in evidence herein) concerning budgets which is as follows: "Each budget shall include provisions in an amount per month as established by the Division of Welfare for the following items which are determined to be essential in accordance with rules and regulations 48 to 61 inclusive: food, clothing, personal expense, school expense, life insurance, household incidentals, transportation, medical and dental expense, shelter, fuel, light, refrigeration, water, and special items." The standard item used in the budgets in this case covered the first three listed in Rule 47; and the testimony of Mrs. Thomas did not indicate that the standard estimate for these was unreasonable. However, the standard item for school expense of fifty cents per month ($6.00 per year) seems subject to the criticism made of it in the separate concurring opinion in the Court of Appeals (285 S. W. 2d, l.c. 86) since the Division's evidence was that it was not bound by that amount for a highschool student but could allow true expenses if they were reasonable. Nevertheless, in making the budget, no effort was made to determine what the true highschool expense was. As to shelter, the only items considered were real estate taxes and fire insurance premiums, allowing nothing for repairs and maintenance, which was allowed even in the Hagy case. Although Rule 47 mentions medical and dental expense, the evidence indicates a policy not to include it unless a member of the family is under treatment at the time the budget is made. While the estimate of expenses made by Mrs. Thomas was apparently greater than actual expenditures (since they amounted to more than the family income although there were no unpaid bills because they got along on what they received) nevertheless, there were some inaccuracies in the budgets prepared by the Division. In particular, the salary of Mrs. Thomas was overestimated by erroneously considering that she was paid $100.00 every two weeks when her salary was actually $200.00 per month ($196.00 after FICA tax) paid on the first and fifteenth of each month. Consideration of the above matters certainly shows that the authorized 20% Income Margin item, for expenses not allowable in the budget, did not exist. We have not considered the claimed $16.00 earnings of the granddaughter because this was not shown to be regular continuing income. (See Sec. 208.010 as to irregular, casual or unpredictable income.) Furthermore, the Division offered in evidence Rule 46.1, as follows: "In Old Age Assistance cases, all income of the following persons who are in the household shall be considered in determining whether the applicant or recipient is in need, and if so, the amount of that need: applicant or recipient; spouse of the applicant or recipient; father, mother, son, daughter, brother, sister, and spouse of the father, mother, son, daughter, brother, or sister (so long as the father, mother,

son, daughter, brother, or sister to whom spouse is married continues to be a member of the household.)'' This says nothing about considering income of a grandchild and in Achor v. State Social Security Commission, Mo. App., 191 S. W. 2d 259 it was held to be arbitrary and unreasonable to consider the earnings of an adult grandchild (living at home) as a resource of the applicant when they were not contributed to the family.

However, what really makes the difference between income sufficient to meet the needs of the family of claimant's daughter *and claimant,* and insufficient income for both purposes, is whether Mrs. Thomas was using such an amount of her income to aid her son in completing his [376] education at the University so as to have left an insufficient amount for her family *and claimant.* This matter was not even considered by the Division or the Director; but instead they only considered and used a standard allowance for one of his age living at home with the family and contributing his summer earnings to the family. The obligation of an adult child to support a parent is a moral and not a legal obligation. (Howlett v. Social Security Comm., 347 Mo. 784, 149 S. W. 2d 806.) We thus commented on this obligation in the Howlett case: ''The moral duty of the child to support his parents is conditioned on his financial ability and on the presence or absence of a paramount duty to support his wife and child. Neither the courts nor any executive agency of government is competent to investigate and determine all of those delicate family relationships and moral duties here involved. The enforcement of the duty must, therefore, be left to the sanctions of religion and the persuasive force of public opinion.''

We held in the Howlett case (149 S. W. 2d, l.c. 812) that our statute, now Sec. 208.010 (6), must be construed as ''denying assistance to otherwise qualified persons who are receiving periodically gratuities which enable them to live in decency and health.'' This is not a case, like the Howlett case, where a child was contributing to the support of a parent and sought to have the State relieve him by granting old age assistance. The question here is whether claimant, who had been receiving state assistance, would receive gratuities from her daughter to replace it. This depends both on what her daughter is financially able to do and what she is willing to do with such resources as she has. There does not seem to be any question about the fact that Mrs. Thomas did to some extent provide part of the money for her son's education at the University. Her testimony was that his expenses amounted to $90.00 per month ($45.00 for board and room, $20.00 for tuition, books and laboratory fees and other expenses of $25.00) and the evidence of the Division shows that he made less than half of it. There is no claim that this was an unreasonable amount and the other half had to come from Mrs. Thomas. If she used her income for that purpose it would appear that she did not have enough left for her mother's support.

1224

Certainly she had the right to make her own choice, as to which of these purposes (both of which were moral obligations) she would apply her income and the Division could not make it for her. The Division's evidence showed that its budget was first made on the theory that the son was in the University under the G.I. program so that Mrs. Thomas did not have to pay any part of his expense. However, when this was found to be incorrect, he was included in a new budget and considered as living at home, using his income from summer employment for the family, which was not the actual fact even on the Division's evidence. We recognize that a claimant has the burden of proof and that the fact finding agency passes upon the credibility of witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony in support of the claim. (Ellis v. State Department of Public Health & Welfare, Mo. Sup., 285 S. W. 2d 634, 640.) However, the Director's decision in this case indicates that it was not based on credibility of claimant's evidence and, in fact, the Division's evidence was all based on information obtained from claimant's daughter, much of which was verified by the case worker. Therefore, since it appears the budgets were made on mistake of facts as to the available income of Mrs. Thomas (on her pay being on a two weeks basis instead of twice a month) and as to her son being self-supporting (in the G.I. Program), ignoring the part of his University expense paid by her, and leaving out such items as repairs and maintenance and her daughter's actual highschool expense, we think it may properly be held that the [377] decision is not supported by substantial evidence.

The judgment of the Circuit Court is affirmed and the cause is remanded to the Director of the Department of Public Health and Welfare for redetermination of the issues. All concur.