Agnes WEIDMAIER, Respondent,

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,**
Appellant.

No. 23169.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., Elmore G. Crowe, Jefferson City, for appellant.

Vernon N. Kneib, St. Joseph, for respondent.

HUNTER, Presiding Judge.

Respondent, 67 year old Agnes Weidmaier, commencing in 1958 received old age assistance until March, 1959, when she was removed from the eligible list because on January 16, 1959, she transferred a life interest in approximately 15 acres of land to her three adult sons. Respondent appealed and a hearing was held on April 9, 1959, before a referee. Thereafter, the director of appellant, the State Department of Health and Welfare, found that respondent had not shown by reliable and convincing evidence that she received property of approximately equal value to the property she conveyed in January, 1959, at the time of the conveyance, and held that she is ineligible for that reason.

Respondent appealed to the circuit court of Buchanan County, which court, on December 15, 1959, found that respondent had not been granted a fair hearing and that the decision of the director was arbitrary and unreasonable. The circuit court reversed and remanded the cause to the director for a redetermination of the issues. From that finding and order the Department of Public Health and Welfare appeals.

The question involved at the hearing was whether the transfer of the real estate by respondent to her children renders her ineligible for old age assistance. The con-

trolling statute, Section 208.010(2) RSMo 1949, V.A.M.S., as amended in 1957, provides that: "Benefits shall not be payable to any claimant who: (1) (a) * * * has made, an assignment, conveyance or transfer of real or personal property or any interest therein of any value within five years preceding the date of the investigation without receiving fair and valuable consideration for said property. * * * 'Fair and valuable consideration' as used herein means money or real or personal property received at the time of the transaction approximately equal to the market value of the property assigned * * *."

Respondent appeared with her attorney at the hearing before the referee. In so far as the questioned transfer of property is concerned she testified that under the will of her husband who died in 1947 she was given a life estate in a 20 acre farm where they lived, located on Pickett Road in Buchanan County, with the remainder to their three sons, Cleo, Vernon and Arthur Weidmaier. In 1955, she, Cleo and Vernon conveyed five acres off the east side of the 20 acres to Arthur so that he could build a home. All he built on it was a basement. She received no money or property for her interest in this land. She and her children entered into an agreement concerning conveying the remaining 15 acres and on January 16, 1959, she conveyed her life interest in the 15 acres to her three children, retaining only her life interest in what, for convenience, we designate as the homesite— a rectangular tract about 98 feet by 240 feet with a 50 year old dwelling house located thereon. In exchange the three children conveyed to her their remainder interest in the homesite. She stated that her reason for making the transfer was to obtain clear title to the homesite so she could borrow money to fix up the house which was inadequately heated by a gas stove located in one of the rooms and to obtain a hot water tank and a basin in the bathroom.

Mr. Vineyard, a builder and subdivider, before the transaction in question offered $4,000 for an easement strip, wide enough for two houses, across the entire 15 acres. Respondent figured the value of the homesite including the house to be worth "around $4,500"; that in the mentioned agreement the remainder of the 15 acres was set at a value of $9,000, giving her life interest therein a value of around $3,500. She stated that before she deeded her sons the life estate in the 15 acres she knew Mr. Vineyard wanted to buy the property but that her sons didn't want to sell it. She had no knowledge of any specific offer made them for it and had received none herself. The 15 acres has a ravine or ditch that divides it which carries drainage for a large area to the north.

Arthur Weidmaier testified that about September, 1958, Vineyard discussed buying an easement across the 15 acres for around $4,000. Vineyard never offered to buy just the 15 acres. Nor has anyone offered to buy just his five acres. The ravine crosses the 15 acres, goes out in the southeast into his 5 acres and then goes into an acreage on the south once owned by a Mr. Boyer and now owned by Vineyard.

Respondent, when Vineyard inquired about an easement, sent Vineyard to Arthur who had the notion Vineyard wanted to connect Pickett Road down to the Boyer land. He knew Vineyard wanted it to develop ground and build and sell houses. At a later unspecified date, but after the exchange of property in question, Vineyard offered him $1,800 an acre for title to the *entire 20 acres.* He and his brothers refused Vineyard's $1,800 an acre offer and advised him they would accept $40,000 for the whole 20 acres. Vineyard never offered any price for the property without Arthur's 5 acres lying to the east, for Vineyard needed a connection into the 40 acres on the south. It was in the latter part of February that Vineyard wanted to build a lagoon on the Boyer tract which had a low area. Arthur's 5 acres, he felt, was the key in the Boyer tract, and although Vineyard "did want to buy it, but we didn't even discuss sums, because it all goes together in my notion." Arthur wants his 5 acres

included and has not offered to sell his interest in the 15 acres alone.

Nelson Hillix, a realtor called as a witness by respondent, testified that the fair market value of the homesite tract where respondent lives is $4,240. He allocates this as $2,740 for the house and $1,500 for the land. Vineyard employed him to assist in obtaining certain land in the area, including the 20 acres in question. Vineyard purchased 74 acres from a Mr. Schmidt " * * * that is land that will drain to one point on Pickett Road, which is the draw (that) angles through the Weidmaier farm." Vineyard told Hillix he wanted to buy it all to put in a lagoon and for drainage. Hillix stated, "that 15 acres, except for the specific purpose of either going through it, or putting a lagoon on it, it hasn't any market value of any kind." The Schmidt property just north of this 15 acres sold for $75,000 for 150 acres. He stated that land was probably the best laying site that close to the city limits, and the 15 acres also lays nice "but there isn't enough frontage to it."

There was other evidence describing the terrain of the 15 and 5 acre Weidmaier tracts and some hearsay testimony relating to past selling prices of nearby tracts indicating per acre values consistent with respondent's view of the value of the 15 acre tract in question.

On this record the director found: "On January 16, 1959, claimant conveyed her interest in the remaining 15 acres to her three children and in exchange the three children conveyed to her a triangular tract about 98 feet by 240 feet with the dwelling house and other outbuildings located thereon. This tract which she received is valued at $4,200.00 to $4,500.00. *Arthur Weidmaier testified he has refused an offer of $1,800.00 per acre for the 15 acres* apparently without including claimant's dwelling which would be about $27,000.00 and that they are asking $40,000.00 for the property. *There is no evidence that this was not a bona fide offer and the evidence indicates the prop-*

*erty can be sold for at least $1,800.00 or more per acre* at the present time. Claimant's interest as a life tenant in $27,000.00 would be about $11,000.00 and her life estate in the $40,000.00 would be about $16,-000.00. It is found that claimant has not shown by reliable and convincing evidence that she received property of approximately equal value to the property she conveyed in January, 1959, at the time of the conveyance and she is held ineligible for that reason." (Emphasis ours.)

The review of the action of the director of the State Department of Public Health and Welfare in removing a person from the old age assistance rolls is "upon the record of the proceedings had before and certified by the director". Section 208.100 RSMo 1949, V.A.M.S. Appeals from the circuit court are likewise upon that record. Section 208.110 RSMo 1949, V.A.M.S. Remand to the director for redetermination of the issues is authorized if the remanding court decides "that a fair hearing and determination of the applicant's eligibility and rights under this law was not granted * * * or that his decision was arbitrary and unreasonable." Section 208.100(5) RSMo 1949, V.A.M.S.

■ By law, the director is made the finder of the facts. Section 208.010 RSMo 1949, V.A.M.S. It is well settled that the reviewing court cannot say that the director's decision upon the facts is arbitrary and unreasonable simply because the reviewing court might have found the facts differently upon the same evidence. But if the ultimate decision of the director is not based upon substantial evidence, the finding must be characterized as arbitrary and unreasonable. If the findings and order of the director are supported by substantial evidence the reviewing court may not disturb the judgment. See, Ellis v. State Department of Public Health and Welfare, En Banc, 365 Mo. 614, 285 S.W.2d 634; Thornsberry v. State Department of Public Health and Welfare, En Banc, 365 Mo. 1217, 295 S.W.2d 372.

In the Thornsberry case, supra, 295 S.W. 2d loc. cit. 376, the Supreme Court stated: "We recognize that a claimant has the burden of proof and that the fact finding agency passes upon the credibility of witnesses and may decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony in support of the claim."

■ It is admitted that on January 16, 1959, respondent by warranty deed transferred her life estate interest in the 15 acres to her children, apparently reserving her interest in the small so-called homesite portion thereof. On the same date her children conveyed to her their remainder interest in the homesite portion. She was then removed from the eligible list for old age benefits for the stated reason that she had transferred her life interest in the nearly 15 acres and had not received in return money or property equal to the value of the property she conveyed. Whether she did receive money or property in return equal to the value of the property interest she conveyed is a fact question for the director to decide. If his decision is supported by substantial evidence the reviewing court must permit it to stand.

As a result of our review of the record we have concluded that the director based his ultimate finding upon a mistake of fact. From his findings, upon which he based his order, it is apparent that he mistakenly thought that witness Arthur Weidmaier had testified that $1,800 per acre had been offered for the 15 acre tract in question. There is no testimony in the record that there was an offer of $1,800 per acre for the 15 acre tract. The $1,800 per acre offer, according to the evidence, was for the entire 20 acres, including the 5 acres owned by Arthur Weidmaier, and which

5 acres, again according to the evidence, was necessary to the would be purchaser in order to permit the drainage of his other acreage.

The situation presented is much like that presented in the Thornsberry case, supra, 295 S.W.2d loc. cit. 376: "* * * The Director's decision in this case indicates that it was not based on credibility of claimant's evidence * * *. Therefore, since it appears the budgets were made on mistake of facts as to the available income of (claimant) * * * we think it may properly be held that the decision is not supported by substantial evidence."

■ In the case before us we are convinced that the director's ultimate decision was occasioned by this mistake of fact arising out of the mentioned testimony of Arthur Weidmaier. We think it properly may be held that the decision is not supported by substantial evidence, and we so hold. We do not speculate as to what his decision would have been but for this mistake of fact.

Under the statute a reversal of a case under the Old Age Assistance Law is a general reversal for further proceedings on the issues joined. As we view the trial court's decision it does not and can not decide any of the facts in issue nor foreclose further inquiry or evidence thereon. It may well be that on retrial there will be evidence offered as to the market value on January 16, 1959, of the respective interests conveyed, or of the 15 acre tract as such and not as a part of a larger tract.

The circuit court's judgment remanding the proceedings for redetermination of the issues by the director is affirmed.

All concur.