**MInta DUNNEGAN, Respondent,**

v.

**C. Rouss GALLOP, Director of the Depart-
ment of Public Health and Welfare,
Appellant.**

No. 8267.

Springfield Court of Appeals.

Missouri.

Jan. 9, 1964.

Thomas F. Eagleton, Atty. Gen., Moody Mansur, Asst. Atty. Gen., Jefferson City, for appellant.

No appearance for respondent.

RUARK, Presiding Judge.

This is an appeal by the Director of the Department of Public Health and Welfare from the judgment of the circuit court reversing and remanding for redetermination a decision of the director denying the application of Minta Dunnegan for old age assistance. The hearing before the referee was held on September 12, 1961, and the decision of the director was rendered on October 11, 1961. Some delay has resulted due to the fact that the director took the appeal to the Supreme Court. That court transferred the case to this court. (Dunnegan v. Gallop, Mo., 369 S.W.2d 206.)

The decision of the director denying the claimant was based upon a finding that Mrs. Dunnegan had transferred the sum of fifteen hundred dollars to a daughter without receiving fair and valuable consideration (§ 208.010, RSMo, V.A.M.S.) between April and August 1960.

Mrs. Dunnegan applied for old age assistance September 6, 1960 and was rejected. The case worker testified that upon investigation in regard to that application:

"A. Well, when I went through her papers, she had two checks, one in the amount of $500 and one for $1,000, and I asked her what she had done with the money, and she said she had given it to her daughter.

"Q. Did she, at that time, tell you why she gave this $1500 to her daughter and son-in-law?

"A. She said she had lived with them for approximately 18 months, and she felt that she owed the money to them.

"Q. Did she tell you anything else concerning her daughter and son-in-law, why she gave them that money at the time she did?

"A. She said her son-in-law was studying to be a Missionary and they were in need. They had had two children, I believe, and they needed the money, and she gave it to them.

"Q. Did she, at that time, say anything whatsoever to you about her daughter giving her money over a period of approximately eight years to keep for her?

"A. No, sir, not at that time she did not.

"Q. And you rejected the application of September 1960 because of this transfer as explained to you by Mrs. Dunnegan, is that correct?

"A. Yes, sir.

"Q. And did you inform Mrs. Dunnegan at the time you rejected the application that is the reason that it was rejected?

"A. Yes, sir.

"Q. And did she, at that time, say anything to you about her daughter giving her any money?

"A. Not at that time, but she came to the office on December 6, 1960, and said that the daughter had the $1500, as she had earned this from teaching school and working in a library in St. Louis."

A new application was made on June 12, 1961, and the transcript carries the record of hearing on that application.

At the time of the hearing Mrs. Dunnegan was seventy-eight years old. She was a widow, her husband having died in March 1950. She testified that she was indebted to her daughter, Nadine, in a sum of "at least" fifteen hundred dollars, and the two checks, one for one thousand dollars on April 22, 1960, and the other for five hundred dollars on August 15, 1960, were cashed by her for the purpose of repaying the daughter. She said Nadine had been her only unmarried daughter and had taught at rural schools. Nadine would come home (presumably on week-ends). It was not feasible for Nadine to get to the bank and deposit her earnings; so she would give what funds she did not need to her mother to deposit for her. Mrs. Dunnegan deposited it in her own (Mrs. Dunnegan's) bank account. "I didn't want the money in the house. Just as soon as I could get to the bank I would go to the bank with it." It was the understanding that she would give the money back to Nadine whenever Nadine called for it. It is difficult to arrive at any exact time or period Mrs. Dunnegan says these things occurred, but she says her daughter was teaching in 1949 and 1950. Subsequent to a teaching period, Nadine went to St. Louis and worked in a library. She fixes the period of the deposits of her daughter's money in the period *between 1950 and 1957*. At some time during this period, Nadine married. Mrs. Dunnegan testified (on September 12, 1960): "She has been married six years this next November, and she give me money until just along before she was married. * * *" Her testimony in regard to all this is somewhat confused and to some extent contradictory, but some of her confusion and lack of memory might be attributable to her age. However, she is positive of one thing, and that is that she never had a bank account except in the Bank of Poplar Bluff. It also appears that claimant lived with her daughter and

son-in-law (apparently in St. Louis) for some eighteen months after that marriage. Nevertheless, Nadine never called for the return of the money until in April 1960, when she wanted one thousand dollars, and in August 1960, when she wanted five hundred dollars. On these occasions Mrs. Dunnegan cashed a check and gave the money to Nadine in cash. On the day the one-thousand-dollar check was cashed, Mrs. Dunnegan also transferred her bank account to a joint account in her own name and the name of another daughter.

Accepted as evidence was the affidavit of the daughter, Nadine Bellomy, of Arlington, Texas. It states in substance that during the years she taught in rural schools in several counties, it was a hardship for her to visit the Bank of Poplar Bluff. For that reason she entrusted to her mother a total of fifteen hundred dollars for deposit to her (Mrs. Dunnegan's) personal account with the understanding that it would be withdrawn and given to the affiant whenever she requested it. On April 22, 1960, she requested one thousand dollars and her mother drew a draft to cash for that amount and gave it to her. On August 15, 1960, she needed the balance, and her mother drew a draft to cash for five hundred dollars and gave it to her. It states that this was the return of her own money.

The ledger sheets of Mrs. Dunnegan in the Bank of Poplar Bluff (the only place she banked) for the years *1950* through *1960* are in the record by agreement at the hearing. The account was apparently opened on April 8, 1950, (this was shortly after her husband's death) with a deposit of one thousand dollars. After that only the following deposits were made:

| | |
|---|---|
| December 16, 1950 | 180.00; |
| April 9, 1951 | 2,640.00; |
| June 19, 1951 | 160.00; |
| April 28, 1955 | 290.00; |
| July 10, 1956 | 7,591.25. |

This last deposit seems to have come from the sale of Mrs. Dunnegan's place. If we

add the early part of the year 1957 to the list, we find a deposit of six hundred eight dollars and seventy-five cents on February 19.

■ The scope of judicial review is limited to determining (a) whether the petitioner was granted a fair hearing, and (b) whether the decision of the director was unreasonable. § 208.100(5), RSMo, V.A.M.S.; Brattin v. State Social Sec. Commission, Mo.App., 194 S.W.2d 536. If there is no substantial or probative evidence to support the findings and the decision is contrary to the undisputed, determinative facts, the decision is arbitrary and unreasonable. Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 819, and cases *post*.

■ As to whether respondent had a fair hearing. She was represented not by an attorney, but by a doctor friend who undertook to act in the capacity of attorney. The hearing was conducted rather informally. The referee explained the purpose of the hearing. The doctor was not familiar with regular procedures, but the referee asked questions of the petitioner and also permitted full inquiry to be made by the doctor, both in and out of regular course. After that the referee invited both petitioner and the doctor friend to make any further statements they wished which might clarify the whole matter. Both were permitted to make such statements as they wished. The petitioner was also permitted to introduce and to have included in the record such affidavits as she wished. The only one which has any value to the question here involved was that of Nadine Bellomy, the contents of which we have set forth. We think the claimant had a fair hearing.

The trial court's finding was that the decision of the director was arbitrary and unreasonable in that "the Director ignored the overwhelming evidence adduced on the part of the Claimant and based his decision solely upon the testimony of Violet Ship-

ton," which testimony the court found was not substantial evidence.

■ The reviewing court does not try the issues de novo. McCoy v. State Dept. of Public Health and Welfare, Mo.App., 271 S.W.2d 788; Davis v. State Dept. of Public Health and Welfare, Mo.App., 274 S.W.2d 615. It is the director, not the courts, who considers, weighs, and determines the credibility of witnesses. Humphrey v. State Dept. of Public Health and Welfare, Mo.App., 286 S.W.2d 563; Norman v. State Dept. of Public Health and Welfare, Mo.App., 283 S.W.2d 143. And if there is substantial, probative evidence of determinative facts to support the finding, concerning which reasonable men might differ, the director's determination of such facts is binding on the courts (Thornsberry v. State Dept. of Public Health and Welfare, 365 Mo. 1217, 295 S.W.2d 372; Choate v. State Dept. of Public Health and Welfare, Mo.App., 296 S.W.2d 189; Bollinger v. State Dept. of Public Health and Welfare, Mo.App., 254 S.W.2d 257; and all other cases herein cited), unless it plainly appears that the director based his decision on a misinterpretation of law (Powers v. State Dept. of Public Health and Welfare, Mo.App., 359 S.W.2d 23) or an obvious mistake of fact (Weidmaier v. State Dept. of Public Health and Welfare, Mo.App., 343 S.W.2d 93, 96) or blindly closed his eyes and mind to and refused to consider competent and probative evidence. Velghe v. State Dept. of Public Health and Welfare, Mo.App., 362 S.W.2d 747, 752; Humphrey v. State Dept. of Public Health and Welfare, supra, Mo.App., 286 S.W.2d 563, 566. It must be remembered that in a proceeding such as this the claimant has the burden of proving eligibility. Carlisle v. State Dept. of Public Health and Welfare, Mo.App., 341 S.W.2d 617; Johnson v. State Dept. of Public Health and Welfare, Mo.App., 283 S.W.2d 147.

■ While this is not the true criterion for our review, we find no "overwhelming

weight of the evidence" in favor of the respondent. To the contrary. The payments to the daughter were admitted. According to the case worker, Shipton, when the 1960 application was under consideration, Mrs. Dunnegan gave a different (and disqualifying) reason for these payments. At the hearing on the 1961 application, she did not specifically deny having made such statements. She did not remember them. And, if her statements are taken as a denial, her credibility was for the director. The deposits shown by the bank records tend to belie the claim of deposits of a school teacher's salary in the total sum of fifteen hundred dollars as testified by claimant.

Keeping in mind that the decision is as to the claimant's qualifications for receipt of old age assistance at the time of the hearing, September 12, 1961 (Sullivan v. State Dept. of Public Health and Welfare, Mo.App., 295 S.W.2d 190; Edwards v. State Social Sec. Commission, Mo.App., 187 S.W.2d 354) and is not determinative of Mrs. Dunnegan's qualifications as of this present date, we must respectfully find that the decision of the director was based upon substantial evidence and was not arbitrary or unreasonable in any respect. The judgment of the circuit court is therefore reversed.

STONE and HOGAN, JJ., concur.