**James C. WHITTINGTON, Plaintiff,**

v.

**Paul GAITHER, Sheriff of Potter County, Texas, and Dr. George Beto, Director of Prisons, State of Texas, Defendants.**

**Civ. A. No. 2–432.**

United States District Court
N. D. Texas,
Amarillo Division.

Aug. 4, 1967.

508

Crawford Martin, Atty. Gen. of Texas, by Allo B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., for defendants.

Deane C. Watson, Amarillo, Tex., for plaintiff.

## OPINION

HUGHES, District Judge.

In this case James C. Whittington filed a petition for the issuance of a writ of habeas corpus in the United States District Court for the Northern District of Texas, Amarillo Division, asking for his release from the custody of Paul Gaither, Sheriff of Potter County, Texas.

Petitioner was convicted of the offense of armed robbery in the 47th Judicial District Court of Potter County, Texas, and sentenced to serve 7 years in the penitentiary. Motion for new trial was overruled and his conviction was affirmed by the Court of Criminal Appeals. Two motions for rehearing were filed and both were overruled. Later an application for writ of habeas corpus was filed in the Court of Criminal Appeals raising the points contained in this application and was denied.

It is Petitioner's contention that Texas procedure in effect at the time of his conviction and appeal in 1965 denied him due process of law guaranteed by the 14th Amendment.

At the time of his arrest bond was set at $10,000.00. He was without funds or resources, except to the extent that his mother was able to raise $350.00 with which he made a partial payment on an attorney's fee. There were no funds available for Petitioner to make bond, thus requiring him to remain in jail until his trial.

Petitioner's chief defense to the charge of armed robbery, which occurred at 7:45 P.M. on January 23, 1965, in Amarillo, Texas, was that he was in Biloxi, Mississippi, on that date and was not in Amarillo at any time on the 23rd of January. It was his contention that he stayed at the Flamingo Motel in Biloxi from about one or two o'clock in the afternoon of the 23rd until eleven o'clock the next morning.

Petitioner's attorney made efforts by mail to contact the elderly couple, Mr. and Mrs. H. H. Brooks, who had managed the motel, but they had left the motel and their whereabouts were unknown. It was not until six days after the trial that Petitioner's attorney learned from the sheriff of Carthage, Mississippi, that Mr. Brooks was employed at the Palmer Home Orphanage, Columbus, Mississippi.

Petitioner in his motion for new trial alleged that he had located two witnesses, naming them, who would testify that he was in Biloxi at the Flamingo Motel on January 23rd. The judge did not take any testimony to determine whether the evidence might have a substantial effect on the verdict. The motion was denied.

Prior to the trial Petitioner being without funds to make bond had been unable to go to Mississippi to make a personal investigation to determine the whereabouts of Mr. and Mrs. Brooks and to find out what facts they recalled.

After his conviction Petitioner's bond was reduced and with the assistance of relatives a sufficient sum was raised for his release. He made a trip to Mississippi and talked with Mr. and Mrs. Brooks, who definitely recalled him and with their assistance he located the card at the Flamingo Motel which Petitioner and Mrs. Brooks had signed on January 23, 1965, when Petitioner was a guest at the motel.

Attached to Petitioner's second motion for rehearing were affidavits of Mr. and Mrs. Brooks, dated October 6, 1966, and were obtained by Petitioner's present attorney. The motion was denied without opinion.

The impossibility of obtaining evidence necessary to establish an alibi prior to the trial was due to Petitioner's inability to go to Mississippi, locate witnesses and determine whether they could identify him. Texas law at the time of Petitioner's trial did not provide for a defendant being released on his personal recognizance.[1] Solvent and responsible sureties were required and Petitioner, being without funds to pay a bondsman to make a $10,000.00 bond and without relatives financially able to be sureties, remained in jail.

Moreover, even if he had located Mr. and Mrs. Brooks prior to the trial and had learned that they could identify him his indigency would have prevented their attendance at the trial. An out of state witness is required to attend only after being tendered the sum of 10 cents a mile and $5.00 for each day required to travel and attend as a witness.[2] Texas had no provision requiring the state to pay the expenses of a witness for the defendant.

It is Petitioner's contention that the procedure pertaining to his trial and post conviction remedies was a denial of due process under the 14th Amendment.

The same allegations as set out here were presented to the Court of Criminal Appeals in his application to that court for the issuance of a writ of habeas corpus. The application was denied without requesting the district judge "to ascertain the facts" which were "necessary for proper consideration of the issues

---

1. Vernon's Ann. Texas Code of Criminal Procedure 1965, Art. 268, A "recognizance" is an undertaking entered into, before a court of record in session, by the defendant in a criminal action, and his sureties, by which they bind themselves, respectively, in a sum fixed by the court, that the defendant will appear * * *. Art. 272. Requisite of a recognizance. A recognizance shall be sufficient to bind the principle and sureties if it contains the following requisites: 1. If it be acknowledged that the defendant is indebted to the State of Texas in such sum as is fixed by the court and the sureties are, in like manner, indebted in such sum. * * *

Art. 279. Sufficiency of sureties ascertained. To test the sufficiency of the security offered to any recognizance or bail bond, unless the court or officer taking the same is fully satisfied as to its sufficiency, the following oath shall be made * * * and subscribed by the sureties:

"I, do swear that I am worth, in my own right, at least the sum of (here insert the amount of which the surety is bound).

2. Texas Code of Criminal Procedure 1965, 486a. Uniform Act to secure attendance of witnesses from without State.

Section 4 * * * If [a] witness is summoned to attend and testify in this State he shall be tendered the sum of Ten Cents (10¢) a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and Five Dollars ($5) for each day that he is required to travel and attend as a witness.

involved" as provided by Article 11.07 [3] of the Code of Criminal Procedure in effect at the time of said application in 1967. In all early cases in which the court has granted relief on a due process issue the facts have apparently been undisputed. Ex parte Bush, 166 Tex.Cr.R. 259, 313 S.W.2d 287; Ex parte Prestridge, 373 S.W.2d 494; Ex parte Hope, Tex.Cr.App., 374 S.W.2d 411; Ex parte Parson, Tex.Cr.App., 374 S.W.2d 442; Ex parte Geter, Tex.Cr.App., 383 S.W.2d 405; Ex parte Caldwell, Tex.Cr.App., 383 S.W.2d 587; Ex parte Cooper, Tex. Cr.App., 388 S.W.2d 939; Ex parte Nash, Tex.Cr.App., 389 S.W.2d 957; Ex parte Brown, Tex.Cr.App., 404 S.W.2d 590. In Ex parte Nolden, 172 Tex.Cr.R. 553, 360 S.W.2d 151, the court suggested that relief will only be granted if the facts are undisputed. For the first time, in the recent case of Hullum v. State of Texas, Tex.Cr.App., 415 S.W.2d 192 (1967) the Court considered facts which were disputed. In this case it was contended that the conviction was obtained on perjured testimony and the court withheld its ruling on a motion for rehearing until a hearing could be held in the trial court and the federal claim of denial of due process had been determined.

■ The significance of the failure by the Court of Criminal Appeals to determine the facts and the uncertainty of the law with reference to the fact finding process is that due process, guaranteed by the 14th Amendment, requires that the states afford an effective post conviction remedy for hearing and determination of claims of denial of due process. Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). In separate concurring opinions Justice Clark and Justice Brennan urged the states to adopt effective post conviction remedies.

■ Due process as it relates to procedural trial requirements depends upon the circumstances involved. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). At page 162, 71 S. Ct. at page 643 the Court said:

" * * * 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitution, history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and the government, 'due process' * * * is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process."

■ In Betts v. Brady, 316 U.S. 455, at page 462, 62 S.Ct. 1252, page 1256, 86 L.Ed. 1595 (1942), the Court said:

"The phrase (due process of law) formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case."

In Brock v. State of North Carolina, 344 U.S. 424, at page 427, 73 S.Ct. 349, at page 351, 97 L.Ed. 456 (1953) the court ruled that "due process" cannot be a precise rule, and declared it so in the following language:

"[I]n all cases involving what is or is not due process * * * no hard and fast rule can be laid down. The pattern of due process is picked out in the facts and circumstances of each case."

---

3. Codes of Criminal Procedure Article 11.07 * * * should such writ be returned to the Court of Criminal Appeals without the facts accompanying same, or without all the facts deemed necessary by the Court of Criminal Appeals, said court may designate and direct any district judge, or judge of this State to ascertain the facts necessary for proper consideration of the issues involved.

A review of the facts in this case clearly shows that Petitioner was not accorded a trial "representing a profound attitude of fairness—between the individual and the government." The procedural rules existing in Texas at the time of Petitioner's trial were such that he was denied an opportunity to present his defense. An appraisal of the totality of the facts leaves the court with the feeling that justice has here succumbed to rigid procedural rules.

The evidence which 1965 Texas procedure put beyond the reach of Petitioner is strong and convincing. Before his trial Petitioner knew of the existence of the two witnesses who had registered him at the Flamingo Motel in Biloxi, Mississippi, on the day of the robbery in Amarillo. It was necessary, however, for him to talk with them since there was nothing unusual in the registration of a guest at a motel and they would in all probability have to see him in order to remember him. No ordinary stranger would be able to activate their recollection of Petitioner. A trained investigator could possibly have located the witnesses and have examined them with such thoroughness that they would have recalled the incident. But even if they had stated prior to trial that they remembered Petitioner only payment of expenses would bring them to the trial.

■■ Petitioner's denial of release on bond or personal recognizance prevented him from developing the facts to prepare his defense and lack of funds precluded him from bringing the witnesses to his trial to establish his defense. Thus he was deprived of the only satisfactory procedure for establishing an alibi. Assuredly a procedure which fails to give the defendant a complete opportunity to present his defense and prevents a full disclosure of the facts to establish a significant element of a defendant's defense lacks the essentials of due process and violates the 14th Amendment.

■ In addition to these procedural rules being a violation of due process they likewise resulted in his counsel being ineffective. The 6th Amendment not only requires defendants to have counsel, but likewise that counsel have an opportunity "to prepare and present their indigent clients' cases." United States v. Germany, U.S. 32 F.R.D. 421 District Court M.D. Alabama (1963). The Court in that case further states:

"An essential ingredient to an attorney effectively representing a defendant in a criminal case, when it comes to determining whether that attorney has had an 'opportunity' to investigate and prepare the case is funds to pay the necessary and essential expenses of interviewing material witnesses."

■ Funds in this case were not available to Petitioner's attorney either from Petitioner or the state. An essential ingredient of having competent counsel being lacking there is a "denial of counsel" within the Sixth Amendment. To be deprived of effective counsel is so lacking in fairness as to be a denial of liberty without due process, contrary to the 14th Amendment.

■ It is the contention of the respondent in this case that Petitioner was not a pauper. A definition of that condition is given in the Allan Report (Report of the Attorney General's Committee on poverty and the Administration of Federal Criminal Justice, page 8, (1963)

"Poverty must be conceived as a relative concept. An impoverished accused is not necessarily one totally devoid of means. A problem of poverty arises for the system of criminal justice when at any stage of the proceedings lack of means in the accused substantially inhibits or prevents the proper assertion of a right or claim."

Here Petitioner was without funds when taken into custody. He did not have money to finance an investigation or make bond and conduct the investigation himself. His situation is clearly within the definition of poverty contained in the Allan Report and he should be so considered.

One other point should be discussed. At the time of Petitioner's application to this court he was ordered released on his own recognizance. An examination of the original application revealed that the points raised had not been presented to the Court of Criminal Appeals. Ruling in this case was held in abeyance by order of this court so that petitioner could present the grounds set out in this application to the Court of Criminal Appeals. That Court in denying the application added the following: "It appears that Petitioner is not now in custody or restraint by virtue of the sentence attacked."

The fact, however, that Petitioner is not now in custody is immaterial. In a similar situation in the case of Reis v. United States Marshal, 192 F.Supp. 79, E.D.Pa. (1961) the government contended that since relator had been released on bail the question of the legality of her confinement was moot. The Court in granting the writ said with respect to relator being free on bond "this fact in no way abrogated her right to have us decide the issues raised by the petition for the writ."

In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) the Supreme Court held that habeas corpus jurisdiction continues, even though the applicant has been released, if he is subject to parole restraint.

The American Bar Association's standards relating to post-conviction remedies published in January 1967 has this to say with reference to custody requirements in habeas corpus cases:

"* * * the availability of post-conviction relief should not be dependent upon the applicant's attacking a sentence of imprisonment then being served or other restraint. The right to seek relief from an invalid conviction and sentence ought to exist:

(i) even though the applicant has not yet commenced service of the challenged sentence * * *

(iii) even though the challenged sentence did not commit the appli-

cant to prison but was rather a fine, probation, or suspended sentence."

It is clear that even though Petitioner is not in the actual custody of the sheriff or the Department of Corrections he has a right through writ of habeas corpus to have determined the issue of whether he should be released from the sentence imposed.

The facts as above set forth are adopted as the findings of fact of the Court.

Since Whittington's trial did not fulfill the requirements of due process of law, Petitioner's application for writ of habeas corpus will be granted unless he is retried in the State Court within a reasonable time.