William WALLIN, Guardian of
May Wonder, Appellant,

v.

**STATE DEPARTMENT OF PUBLIC
HEALTH AND WELFARE,**
Respondent.

No. 53335.

Supreme Court of Missouri,
En Banc.

Dec. 11, 1967.

Rehearing Denied Jan. 8, 1968.

E. L. Bartram, Maryville, for appellant, May Wonder.

Elmore G. Crowe, Chief Counsel, Division of Welfare, Jefferson City, for respondent.

HENLEY, Judge.

This is an appeal by William Wallin, guardian of May Wonder, from a judgment of the circuit court of Nodaway county affirming a decision of the Director of the Department of Public Health and Welfare (hereinafter referred to as Director) that May Wonder (hereinafter sometimes referred to as Claimant) is ineligible for old age assistance benefits. On appeal to the Kansas City Court of Appeals that court reversed the judgment and remanded the cause with directions to enter judgment in favor of Claimant, that she be reinstated on the old age assistance rolls as of November 5, 1965, and that she be paid such sum as she would have received had she not been removed from the rolls. We ordered the case transferred to this court, on application of respondent.

Article V, § 10, Constitution of Missouri, V.A.M.S.

At the time of the hearings before the Director in January and May, 1966, Claimant, a widow 87 years of age, resided at the Wallin Nursing Home in Nodaway county. She is almost blind, suffers from a heart condition requiring regular medication, is unable to care for herself and is confined to a wheelchair. She entered the Nursing Home (owned by her guardian, William Wallin) in September, 1961, and, except for two short periods of time, has resided there continuously since that date. The cost of her care and maintenance is approximately $157 per month, including expenses for medical care and medicine. When she became a patient at the Nursing Home she was the record owner of real estate, her home, in Maryville, Missouri, acquired in 1959 or 1960. She was on the old age assistance rolls when she entered the Home, and had been for several years. On November 5, 1965, she was removed from the rolls by the Nodaway County Welfare Office for the reason that she owned real property (her home) of the value of $3,500 which was considered a resource available to meet her needs rendering her ineligible for public assistance, because 24 months had elapsed since she last occupied her home.

From the order removing her from the rolls she appealed to the Director, her chief contentions being: (1) that a fair appraisal of her property had not been made; and, (2) that her debts had not been considered, as a result of which the fair net value of her property had not been determined. The Director conducted two hearings at which Claimant's representatives were given every opportunity to present evidence in support of her contention that she was eligible for public assistance and should not have been removed from the rolls. Because of her condition she was unable to attend either hearing; however, at the first hearing she was represented by Helen Ditto, wife of her nephew, Everett Ditto; at the second she was represented by her guardian, her present attorney, and her nephew. All evidence heard and presented to the Director was preserved and, as certified by the Director, constitutes the record on which we review the case. Sections 208.100 and 208.110 (all statutory references are to RSMo 1959 and V.A.M.S.); Thornsberry v. State Department of Public Health and Welfare, 365 Mo. 1217, 295 S.W.2d 372, 374 [2].

Based on that evidence, the Director ruled June 16, 1966, that Claimant was ineligible to receive old age assistance benefits for two reasons: (1) on November 5, 1965, she owned property of the value of $2,500, an available resource sufficient to meet her needs within the meaning of § 208.010, subd. 2(6) and Division of Welfare Rule and Regulation No. 13;[1] (2) she transferred her property April 4, 1966, to her nephew, Everett Ditto, and his wife, without receiving a fair and valuable consideration. Section 208.010, subd. 2(1) (a).[2]

1. Rule and Regulation No. 13, received in evidence, provides, in part, that real property of the value of $750 or more owned by a public welfare assistance recipient which is not furnishing shelter for him shall be considered as a resource (within the meaning of § 208.010, subd. 2(6)) rendering a claimant ineligible for assistance, provided 24 months have elapsed since claimant occupied the property.

2. That subdivision of § 208.010, provides: "Benefits shall not be payable to any claimant who * * * has encum-

bered * * * or transferred real * * * property, of which he is the record * * * owner, * * * within five years preceding the date of the investigation without receiving fair and valuable consideration." It further provides that the date of recording the instrument which encumbers or transfers property shall be considered the date the transfer occurred. And, it further provides: "'Fair and valuable consideration' * * * means money or * * * property received at the time of the transaction approximately equal to the value of the property encumbered * * * or

As stated, our review of this case is on the record of the hearings before the Director. Thornsberry, supra. "Reversal and remand to the Director is authorized by Sec. 208.100 subd. 5, if his decision was arbitrary or unreasonable. * * * We have held that only if the Director's decision is not based on substantial evidence, can his findings of facts and order based thereon be characterized as arbitrary or unreasonable and his determination reversed for that reason. Ellis v. State Department of Public Health & Welfare, [365 Mo. 614] 285 S.W.2d 634 and cases cited. Therefore, the only question to be determined herein is whether the findings and order are supported by substantial evidence." Thornsberry, supra, 1. c. 374–375.

In determining whether there is substantial evidence to support the Director's decision we may consider only the evidence most favorable to the Director's findings and order. "That the circuit court might have, or that an appellate court, upon consideration of the record evidence de novo, could reach the opposite conclusion from that reached by the Director is neither of consequence upon, nor determinative of this appeal." Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W. 2d 817, 820 [4], and cases cited. As indicated, we do not review the record de novo for the purpose of making our own independent determination of the issues.

The burden of proving her eligibility for public assistance was on Claimant. The Director, as the fact-finding agency, passes upon the credibility of witnesses and may, of course, decide a claim solely upon a finding of lack of credibility of uncontradicted and unimpeached testimony in support of the claim. Thornsberry, supra, 295 S.W.2d 1. c. 376 [5]; Ellis, supra.

The evidence is somewhat conflicting, but these facts are not in dispute: (1) on May 31, 1960, Claimant and her now deceased husband executed and delivered a deed to her Maryville home to her nephew, Everett Ditto, and his wife; (2) this deed was recorded April 4, 1966, between the first and second hearings before the Director; (3) the property conveyed by the deed is of the value of $2,500; and, (4) Claimant did not, on the date the deed was recorded, receive any consideration from the grantees. As to fact (4), Everett Ditto testified that on April 4, 1966, the date the deed was recorded, he did not pay or deliver any money or property to his aunt, the Claimant. We might well stop at this point and affirm the judgment, for the reason that, technically at least, when § 208.010, subd. 2(1)(a) is applied to these facts she obviously was not eligible for public assistance benefits. However, because of contentions of Claimant, we summarize other evidence bearing on whether Claimant received a "fair and valuable consideration" for the property.

Claimant contends that she received a fair and valuable consideration for the property, a consideration which would not affect her eligibility. Specifically, she says that prior to November 5, 1965, she was indebted to the Dittos for money advanced her by them to pay: (1) part of the purchase price of the Maryville home, with interest thereon from date of purchase; (2) for maintenance of the property; (3) real estate taxes; and (4) insurance premiums for insurance on the home. She further contends she gave the Dittos a note for $2,500 as evidence of her indebtedness to them for advancement of a part of the purchase price of the home; that the deed dated May 31, 1960, was delivered to them as security for that indebtedness and was in the nature of an equitable mortgage; that the Dittos foreclosed that mortgage April 4, 1966, by securing a decree of foreclosure in the circuit court of Nodaway county, by reason of which the

transferred, and shall not * * * be construed to include support, services, or

other advancements made or to be made by a relative to a claimant."

transfer of the property was not her voluntary act but was involuntary.

Mr. and Mrs. Ditto testified that in 1958 or 1959, Mr. and Mrs. Wonder lived in Kansas City where they owned a home; that they expressed a desire to move to Maryville, and asked Mr. Ditto to purchase a home for them there with the understanding that when they sold the Kansas City property they would apply the proceeds toward reimbursing the Dittos; that they bought the Maryville home in 1959 for $5,000 and also bought furniture for it for about $1,500; that the Wonders moved into the Maryville home, and in 1960 sold the Kansas City property; that the Wonders used the proceeds ($3,500) to reimburse them. Mr. Ditto further testified that he and his wife conveyed the home to the Wonders; that nothing was mentioned about a "selling price" for the property; that the Wonders gave them a note for $2,500 and, at the same time, gave them a deed to the property as security for that and future advances and services. The note was not offered in evidence. In answer to a question propounded by Claimant's counsel, Mr. Ditto said that the property " * * * was not sold back to them [the Wonders] for $6000.00 * * [t]hey just got it for paying the $3500.00." He further testified that after his aunt was removed from the assistance rolls he found himself in financial straits, needing money; that he filed a (friendly) suit against his aunt to recover the money he had in the property plus other money he had advanced for her benefit. A decree entered April 4, 1966, by the circuit court of Nodaway county was received in evidence; this decree purported to divest Mrs. Wonder of title to the Maryville property and vest it in the Dittos, based on the deed from the Wonders to the Dittos; the decree also mentions credit extended by the Dittos to Mrs. Wonder totalling approximately $5,400 evidenced by a note and checks, but it does not describe the note by date or amount. As indicated, the May 31, 1960, deed from the Wonders to the Dittos was filed for record the same day this decree was entered.

There was also received in evidence by the Director two "Claimants' Eligibility Statements" or applications for old age assistance filed with the County Welfare Office, one dated July, 1960, and the other April, 1962. The first was executed by Mr. and Mrs. Wonder; the second, filed after Mr. Wonder's death, was executed by Mrs. Wonder; both applications represent that the property in question is owned by the applicant, that it has a value of $3,500 and is free of mortgages, and that the applicant has no legal debts. Neither application mentions the deed to the Dittos.

■ Claimant contends the Director was bound by this decree. We do not agree. While under the powers of a court of equity this deed might be decreed to be a mortgage given to secure a fair and valuable consideration (the amount advanced by the Dittos for purchase of the property, and possibly other advancements), the decision of the Director, and the reviewing courts, as to what is a fair and valuable consideration for the transfer of property by a public assistance claimant, and the date of such transfer, is governed, not by the general law, but by a special statute, § 208.010, supra. This section provides that "fair and valuable consideration" shall not be construed to include advancements made by a relative to a claimant; therefore, this transfer by Claimant to her nephew (for the consideration mentioned and by a deed dated May 31, 1960, but withheld from record until April 4, 1966 (the statutory date of transfer)) was not for a fair and valuable consideration, and the transfer rendered her ineligible for public assistance at that time.

■ Our examination of the record leads us to the conclusion that Claimant was accorded a fair hearing before the Director, and that his decision, and the judgment of the circuit court, is supported by substantial evidence.

Having determined that the evidence supports the Director's finding and decision that Claimant did not receive a fair and valuable consideration for her transfer of this property, we need not determine whether there is substantial evidence to support his other finding that on the date she was removed from the rolls she had, within the meaning of § 208.010, subd. 2(6) and the Division's Regulation No. 13, an available resource sufficient to meet her needs.

The judgment is affirmed.

All concur.